Wardlaw, J.
delivered the opinion of the Court.
1. The plaintiff’s complaint undergoes some variation in the three counts of his declaration, but the substance, beyond which it is not any where extended, is that by excavations and embankments in public streets, by which his squares are bounded, the defendants have obstructed his way into and from his squares, and by this consequence and other injurious consequen *591 ces of their operations in the streets have deteriorated the value of his squares. It is then a private action for damages done by a public nuisance.
The only way, which the evidence shews that the plaintiff ever used to his house or farm on his squares, is through his gates in the S. E. corner of square 4, opening upon Blanding street. That way has been in no wise obstructed by any thing that the defendants have done: The excavations which have been made in Laurens-street, and near to the crossing of the Rail Road in Blanding-street, might interfere with entrance into plaintiff’s squares, if entrance was desired at points next to those excavations; but at all such points, before the commencement of defendants’ operations and ever since, the plaintiff has had an unbroken fence; and whatever improvements he may contemplate or imagine, he does not appear to have been as yet hindered in any use of his squares which he desired.
The plaintiff has not then shewn that right to maintain his private action for a public nuisance, which would have arisen frond evidence that his only way to-his close had been obstructed by th.e stopping of the highway, (Year Book, 27 H. 8, cited 2 Bing. N. C. 281); or from evidence that any direct loss of profits and advantage had resulted to him more than to others, from the obstruction of any way that before had been used to his close, (Wilkes vs. Hungerford Market Co. 2 Bing. N. C. 281); or from evidence that any actual harm had been suffered by him peculiarly, from the obstruction of any highway. (Bac. Abr. Nuisance, D ; Chichester vs. Lethbridge, Willes, 71).
The plaintiff, however, insists mainly upon the deterioration in the value of his squares. In the opinion of various witnesses. his squares have, by the operations of the defendants, been rendered less suitable for private residences, and less valuable if brought into market; but no sale of them appears to have been lost. If every thing done by defendants of which he complains should be undone, then he would be in as good a condition, as if nothing of which he could lawfully complain had been done by them. His complaint is of an unauthorized *592 obstruction of public streets, and to sustain such a complaint, a particular direct damage must be shewn, (Carey vs. Brooks, 1 Hill, 365; Co. Litt. 56 ; Salk. 15). Any loss, that by deterioration of property, or otherwise, has ensued, may serve, but there must be some actual loss. Even in the case of Baker vs. Moore, (cited in Lord Raym. 491, and as to which Bosanquit, J. says, (2 Bing. N. C. 344,) that the foundation of the action was injury, occasioned to the plainliff by the deterioration of his property,) whilst it was held that the action would lie for obstruction of a common way, in consequence of which plaintiff’s tenants who had used the way departed, per quod the plaintiff lost the profits of his houses, judgment was arrested because plaintiff had not shewn himself possessed of any tenement in which there was a tenant: he could not be damnified if he had not any house. A mere temporary diminution of marketable value, whilst the property is out of market, and the owner’s enjoyment of it is uninterrupted, is no actual loss, but only matter of speculation which ceases when the cause of diminution is removed. An unlawful obstruction of a highway, like any other nuisance, is not contemplated to be perpetual, but after conviction upon indictment, it is abated at the cost of the offender. (1 Russ. on Crimes, 328). A peculiar loss, which it has occasioned during its continuance, may be repaired by a private action, but the speculative influence which, if it lasted, it would have had on the value of property, is prevented by the abatement of the nuisance.
The evidence does not then sustain the plaintiff’s right of action, as he has himself stated it, and, in strictness, no more need be said to justify the order for non-suit which was made on the circuit. But the third count does not explicitly allege-that the streets obstructed were public streets, — the parties, without looking to the pleadings, have in this Court argued the merits of the case, and it seems to be desired, that an opinion should be pronounced upon the case made by the evidence, as if every allegation that plaintiff might have made, had been made. We will, therefore, proceed.
*593 2. There has been, in the argument, a minute examination of the various Acts of the Legislature concerning the Town of Columbia, (3 Brev. Dig. 74,) for the purpose of settling the question, Where does the fee of the streets of the town abide — in the State, in the commissioner of the town, in the Town Council, or in the owners of adjoining lots? — and again, another question as to the legal character of the streets, Are they public highways, or more private property, or of a mixed character as open places so connected with the adjoining squares, that whilst they are for the common use of all citizens, the owners of adjoining lots have in them a peculiar right? Neither of these questions will be decided now, for here it suffices to shew, that in no view can the plaintiff sustain this action.
If the streets are ordinary highways, and their obstruction has been authorized by law, no right remains for an individual to complain, by action at law, of peculiar damage done to him by an act detrimental to the public, which public authority has sanctioned, if an unauthorized obstruction of a public highway has been made, then whether the company is without charter, or has exceeded its chartered powers, whether the right to enter the town is not conferred by the charter, or a condition required before it shall occupy a street has not been complied with, — still there exists only the case which is alleged in the declaration, — a nuisance done of which an individual complains, — and the action cannot be sustained without proof of direct damage already sustained, contra-distinguished from contingent and probable loss apprehended : — and such is the case, wheresoever the fee of the highway may be.
3. If the streets by which plaintiff's squares are bounded are not highways, but merely unoccupied land owned by some other person, then, no matter in what body or person the title is vested, the plaintiff cannot have an action for damages done to that land by excavations or other acts, which would, if not justified, be trespasses against the owner: and his action for consequential damages to his property occasioned by such acts, must shew a wrong done, as well as natural, proximate loss, resulting there *594 from, (a) Whatever the owner might do, the defendants, exempt from all imputation of malice and unchallenged by the owner, may do without liability to the plaintiff. Whether the owner of an adjoining lot may dig to his exact boundary line, or only so close that his neighbor’s earth will not naturally slide into his excavation, it is clear that here no excavation has been made so near the plaintiff’s land, as to give an action on. that account only. (b) The residence of the plaintiff may, by the excavations that have been made, have been rendered less comfortable and elegant: so witnesses think it would have been by the mere existence of the Rail Road and depot in his neighborhood, (of which he has not complained and could not complain): and so it might have been, by the establishment on land adjoining his of a public school, the erection thereon of a theatre, or the doing of any one of the thousand acts, which the owner of adjoining land may lawfully do, to the great offence of the taste or fancy of a neighbor, and even to his great annoyance and hurt. Every land-owner is supposed to anticipate the possibility of uses, consistent with law, yet unpleasant and harmful to him, being made of adjoining lands, and to prevent such possibility by extension of his domain, or to indemnify himself against it by abatement of the price when he purchases.
4. The plaintiff, however, urges strongly his rights derived from the circumstances which have attended the establishment and growth of the Town of Columbia. The State purchased the laud, caused a town, with streets and. squares, to be laid out, sold the lots of the squares bounded by streets, and, in its legislation concerning the closing of some streets, has recognized the right of the owners of lots, bounded by streets to be closed, to object (c). The town is yet so imperfectly built that many lots and some whole squares are unoccupied and even unenclosed — some streets have never been opened so as to be actually used by the public, or even by the owners of adjoining lots, yet the *595 streets laid out are looked to by the owners of vacant lots as valuable appurtenances to be enjoyed at their pleasure. Hence it is argued, that in every street butting on a lot, the lot-owner has an interest greater than other citizens have, from which such actual loss as would sustain an action for wrongful obstruction of the street must necessarily be implied.
Without questioning the deduction here made, let us see whether, under any form, which can be given to the interest thus imputed to a lot-owner in a street which is his boundary, the present action can be sustained.
The interest must be either a private right of way in the street, or some anomalous right of a private individual in a public highway, which is of necessity invaded by the obstruction of the highway.
5. If the plaintiff had a private right of way in Laurens street, then his'action on the case lies, if the obstruction of the street has been made without lawful authority. This requires an examination of the objections which he has made to the authority of the Rail Road Company, under its charter, to occupy the said street.
The first charter was granted to the company in 1846, (11 Stat. 397). A second charter was granted to it in 1848, by an “ Act to produce conformity in the charters granted to the Charlotte & South Carolina Rail Road Company by the States of North and South Carolina.” (11 Stat. 533). The latter Act, § 33, provides, that “ the charter heretofore granted to the Charlotte & South Carolina Rail Road Company, shall continue of force except in so far as it may be repugnant to the provisions of this Act.” Of course any increased authority given by the second Act, is additional to the authority conferred by the first; any unconditional enactment, by the second, of a provision subject to a condition by the first, removes the condition; and where a power to be exercised upon terms is granted to the company by both Acts, but the terms are made more advantageous by th second, the company may avail itself of the advantageous modification.
*596 The plaintiff objects, first, that the charter gives to the company no authority to enter the Town of Columbia with its Rail Road. In direct terms, such authority is not given: but the § 9 of the Act of 1848, authorizes the construction of a Rail Road from some point on the South Carolina Rail Road to the Town of Charlotte; the § 1 of the Act of 1846 says, “such point on the South Carolina Rail Road as may be agreed by the stockholders” of the company to be formed ; it was known that one terminus and a portion of the track of the South Carolina Rail Road were in the Town of Columbia ; the proviso to § 17 of the Act of 1848, shews that it was contemplated that a town might be on the line and at the terminus of the road to be constructed; and these matters, accompanied by the absence of any thing from which a denial of the authority in question might be inferred, leave no room to doubt that the authority to pass through the town was included in the grant which was made (Act 1846, § 15,) to the company of full power to choose at discretion the route between the prescribed termini.
In the second place, it is objected, that the authority to occupy the streets of the town has not been given. The streets, it is said, have been already appropriated by the State. All lands which have been granted, have been appropriated, but every gsant and appropriation of land is subject to the right of the eminent domain. It is said that the State-house square might be invaded — the chief business street of the town be obstructed. With special exceptions which guard dwelling-houses, yards, gardens and grave-yards from invasion, (Act 1846, § 15,) and protect dwelling-houses, not in a town or village, from the annoyance of a depot nearer to them than one-fourth of a mile, (Act 1848, § 17), and prescribe the terms upon which public roads and water courses may be interfered with, (Act 1846, § 22, Act 1848, § 18), — the fullest discretion is given as to the route between the' termini, with power to “ enter upon all lands and tenements through which they may desire to conduct their Rail Road, and to lay out the same according to their pleasure;” — subject only to the provisions concerning the width of the track and the *597 quantity of land to be taken, without the consent of the owner, for a depot or other building, and to the duty of paying, according to an assessment to be made in a mode, which would deter from wanton invasion of lands appropriated to a valuable use. Independent then of the special provisions concerning interference with a public road, which we will hereafter examine, there is no ground for the objection that the company had not authority to occupy the streets in question.
If then the occupation of the street was authorized by law, there was no wrong in the Act itself, and none in the manner of doing it has been imputed: so that the plaintiff, upon the supposition of the street being his private way, shews only damage without wrong. He insists, however, that that is sufficient to sustain his action as a means of obtaining compensation for his loss, because the charter, in its provisions for compensation, does not include private rights of way and other incorporeal hereditaments.
6. The charter contemplates that any land, which the company is authorized to take, shall be taken without any preliminary proceeding, and without any proceeding shall, after a prescribed time, be presumed to have been granted to the company; but that within the prescribed time, the owner, if there should have been no purchase from him, may have an assessment of the value by commissioners. (1846, § 16. 17; 1848, § 19, 20). The words used to describe the subjects of assessment, are “ lands or right of way required by the said company.” Right of way here, seems from the context to mean a right to be acquired by the company of passing through another’s land, and not' an easement that some other person has in the lands of another, which the company desires to extinguish. Such an easement is not of that substantial character which ordinarily distinguishes land from some other subjects of properly, that fall under the larger denomination of hereditaments ; and the plaintiff, therefore, insists that having by the charter no mode .of compensation provided for his lost right of way, this action well lies for his recovery of adequate damages.
If the remedy provided by the charter had been applicable to *598 the subject, it would necessarily have been exclusive. The rightful exercise of the eminent domain precludes all notion of wrong done. The person whose property is taken loses the value of the property, diminished by any advantage which results to him, individually, from the public improvement or other purpose of the taking, more than his equal share as a member of the State. Compensation for this loss is the measure of redress which natural justice entitles him to. There would be no i compulsory mode of obtaining compensation without the license of the Sovereign that authorizes the taking; if without provision for compensation, the taking would be unlawful, (as it I would be under some constitutions), then for it would be recovered, not compensation, but damages for a trespass. When the I Sovereign has, for a lawful taking, licensed one mode of enforcing compensation, all other modes remain unlicensed, and a neglect to resort to this one raises a presumption that compensation is waived, even without express enactment of such presumption : and when this mode forms part of a contract between the Sovereign and the grantee of a franchise for a public improvement, the permission of any other mode of extorting compensation from the grantee would be unjust and invasive of the contract.
Assessment of compensation, and an action for damages, proceed upon wholly different principles (d). One subserves the purpose of the contemplated improvement, and equalizes its burden amongst those who enjoy its common benefit: the other, without regard to the advantage done, makes repaiation for the damage sustained, and in so doing, conclusively establishes between the parties a right, which in future actions may be urged to the entire interruption of the public work. Where an assessment can be had against a company, the authority of the company to take is recognized, and the equitable duty which the Sovereign has devolved upon the company of making compensation to the individual from whom more than his just contribution for the public good has been taken, is enforced : an ac *599 tion for damages denies the authority to take, and is inconsistent with the right to have compensation, distinguished from damages. The two cannot be concurrent remedies.
It must follow that whenever private property is lawfully taken by virtue of the eminent domain, the action for damages is excluded, even if no mode of obtaining compensation is provided. No express constitutional provision in this State demands compensation as a condition of the exercise of the eminent domain. When land is taken for a public use and vested in a private company, it is presumed to be required by public necessity, and is held in a public right. The grant of the power to take is not void, and if provision is not made for compensation, either the sacrifice of his property without compensation is exacted from the individual sufferer, or he must resort to the equitable obligation which arises from natural justice. If this obligation would devolve upon the State which grants the power .tQJtake, it might be appealed to by petition; but not by action. Whether it could be shifted to the grantee of the franchise, might depend upon an examination of the contract between the State and its grantee. Wherever it might rest, an asseition of the duty to make compensation would contradict the supposition of any liability for damages, which had proceeded from the exercise of the granted powers. Even if an action to enforce such duty against the grantee should arise from the omission of suitable provisions for compensation in the charter, such action would rest upon implied contract, and not upon tort as the present action does.
For a lawful invasion of his private right of way, the plaintiff could not then sustain this action, to recover either compensation or damages; the same observations would apply to a like action for an authorized invasion of any private interest in a street, not amounting to a right of way, which the plaintiff may be supposed to have had, so far as such interest could be looked upon as property and be separated from the right which the public has in a highway. -
7. It remains, lastly, to suppose, that every part of a street, in *600 the town of Columbia, is by law a public highway, in which the adjoining lot-owner has such a peculiar interest, that special damage to him, from an obstruction of the street, must necessarily be implied. This supposition overrules the objection, which we have held fatal to the action, arising from the want of evidence of actual loss, and requires that an obstruction shewn should be justified by proof of lawful authority on the part of the defendants. The objections before considered to the charter, adduced as evidence of the defendants’ authority, would here meet the same answers which we have before given. The plaintiff, however, with great confidence, urges another objection, which applies only upon the supposition that the streets are to be held public roads. He says that the Company have not done what the charter requires that they should do, before their authority arises to occupy a public road, or conduct their rail road along it: — this we will now examine.
The 22d section of the Act of 1846 enacts, that, whenever, in the construction of the rail road, it shall be necessary to cross or intersect an established road or way, it shall be the d uty of the Company so to conduct their rail road across such road or way, as not to impede the passage or transportation of persons or property along the same: — provided, however, that in order to prevent the frequent crossing of established roads or ways, or in case it may be necessary to occupy the same, it may be lawful for the Company to change the said roads at points they may deem it expedient to do so: provided, further, that previous to the making of any such change, the said Company shall make and prepare a road equally good with the portion of the road proposed to be substituted: provided, also, that the commissioners of the roads for the place where such alterations shall be desired, shall assent to such alterations and approve of the substitutes when completed.
The 18th section of the Act of 1848 enacts, that the said Company shall have the right, when necessary, to conduct their rail road across or along any public road or water course — provided that they shall not obstruct any public road without con *601 structing another equally as good, and as convenient as may be, nor put a bridge across a navigable stream without making a sufficient draw in such bridge.
The defendants say, that neither of the clauses, which requires another road to be prepared in lieu of the one that may be occupied, creates a condition precedent to the right of occupying a road-bed, especially that the clause in the last Act does not,— but that either is only a directory specification of the manner in which, under certain circumstances, the power of the Company shall be exercised in accordance with the duty enjoyned upon them of preventing the obstruction of a highway: and that it is for the sovereign, which has granted the franchise, to enforce the performance of the duties required. Let it, however, be admitted, that whenever the sovereign might punish the Company by forfeiture or otherwise, for their neglect to prepare another road in lieu of the one they had obstructed, a lot-owner may have his action for the damages which such neglect has brought upon him. Our supposition of the lot owner’s rights demands the converse, that where the terms imposed by the sovereign have not been violated, the lot owner can have no action for the damages, which, without legal wrong, have been done to his interest.
Either of the sections above recited, taken in connexion with the general grants made by either charter, establishes the authority of the Company to occupy the bed of a public road, if they do not obstruct it or impede passage or transportation along it: and in view oi the general impracticability of occupation without obstruction, requires the obstruction to be obviated by the preparation of another road. Under either of the sections, an action against the Company brought by a plaintiff, whose particular loss or peculiar legal right might enable him to sustain an action, whilst it recognized the general authority to occupy, shouldiegularly aver the obstruction or impeding as the gravamen: and the Company, if it did not traverse the obstruction, would be required to shew in defence another road, equally as good; prepared. That other road, by the Act of 1846, must have been *602 prepared before the obstruction, and been approved by the commissioners of roads, and their assent to the alteration been given. Under the Act of 1848, the other road must have been provided within as short a time as circumstances would reasonably permit, (like a bridge over the rail road where there is a deep excavation across a public road, or a draw in a bridge across a stream) — and must have been as good, that is with as good a road-bed, as the old, and “as convenient as may be,” that is, as short in distance and as conveniently arranged as circumstances would admit.
It will be observed that the whole requirements from the Company in these sections are for the benefit of the public, and that if these be met by the Company, the contract with the sovereign is faithfully executed. The incidental right, which we have supposed a lot-owner to have in the street is not specially protected, and may be entirely destroyed, yet all that the Company is required to do have been done. Thus for instance, — The plaintiff’s squares lying east of Laurens-street, which he says has been obstructed, under the Act of 1846, a road might have been prepared, and approved by the commissioners of roads, west of Laurens-street, as a substitute for that street, and the excavation of the rail road have gone nearer to the plaintiff’s squares than it now does, and he have been cut off from entrance into his squares through Laurens-street, whilst the rail road ran between him and the new road or street: — so, under the Act of 1848, the same might have been done if another road “ equally as good and as convenient as may be” had been prepared west of the rail road. Under one Act, the judgment of the commissioners would probably be held conclusive of the sufficiency of the substitute: under the other, the tribunal which hears the defence of the Company against a charge of obstruction might be required to judge, whether the substitute is good and convenient as is required.
Now to apply these remarks to the case — Laurens-street, north of its intersection with Laurel-street, had never been used by the public, and was, from the nature of the ground, so unfit for *603 use, that with the rail road in it, it is as good a road as it was before: the only obstruction, of which there is proof, is of Lau-rens-street, between Laurel and Plan ding-streets. If. for this obstruction a proper complaint had been preferred by the plaintiff, under the interest which we have supposed a lot-owner to have in a public highway, it might have been made to appear that the width of the street unobstructed is sufficient, so that passage or transportation along the part of Laurens-street which has been in part occupied, has not been impeded; or that the streets which by .some circuity lead from the intersection of Laurens and Laurel-streets to the intersection of Laurens and Blanding-stfeets,.have been substituted for the obstructed portion of Laurens-street: and that the devious road thus substituted is equally good, and has been approved by the commissioners of roads, or is as convenient as may be. The evidence which was given concerning the pavement and eighteen other feet of Laurens-street which were unobstructed, and concerning the action which was taken by the Town Council of Columbia, (which has the power pf commissioners of roads,) and the course of travel, might have sustained one or other of these views. But a consideration of this evidence was rendered unnecessary by the fact, that when the plaintiff commenced his action, no part of Laurens-street had been at all obstructed or the travelling upon it impeded: on the contrary, that it had been only levelled and made more fit for passage and transportation than ever it was before, however difficult may have been the entrance from it to plaintiff's lots, if such entrance had been desired. There was then, no ground for the interference of the sovereign, and of consequence none for the action of a lot-owner. ‘
In no view then that has been suggested could this action have been maintained.
The motion to set aside the nonsuit is therefore dismissed.
Evans, Frost and Withers, JJ. concurred.

Motion dismissed.

 Harrison vs. Berkley, 1 Strob. 525.

 Wyatt vs. Harrison, 3 B. & Ad. 871; Dodd vs. Holme, 1 Ad. & E. 493: Callender vs, Marsh, 1 Pick. 418.

 6 Stat. 53.

 American Law Mag. vol. 1, p. 52, art. 3, on consequential damages.