*231 Tbe opinion of tbe Court was delivered by
’W’ae.dlA'w, J.
Tbe motion in arrest of judgment, assuming tbat tbe verdict for tbe plaintiff bas been rendered on tbe third and fourth counts only, and is in effect a verdict for tbe defendant on tbe first and second counts, requires tbe sufficiency of tbe third and fourth to be examined.
Tbe third, analyzed mor'e carefully than bas been done in tbe report, will be found to complain tbat tbe defendant, in tbe City of Charleston, wrongfully and injuriously erected buildings on bis lot, contiguous to tbe dwelling house of tbe plaintiff, and therein wrongfully and injuriously, carried on, and still carries on, tbe business of pressing cotton bales by machinery worked by steam, and called a steam cotton press,' to .which are appurtenant, furnaces, boilers and large fires; and therein kept, and still keeps, large quantities of cotton, an inflammable material, easily ignited and difficult to be extinguished: by which means tbe dwelling bouse of tbe plaintiff is subjected to increased risk of fire, and thereby rendered insecure, unsafe, uncomfortable and of less value, and be required to pay higher rates of insurance, and prevented from insuring for so large an amount.
A summary outline of this count is as follows: Tbe wrongful acts of tbe defendant have increased tbe risk of fire, and tbat risk bas destroyed tbe security and comfort of tbe plaintiff’s habitation, depreciated tbe value of bis property, and subjected him to increased expense of insuring.
Tbe fourth count complains in like manner of tbe wrongful and injurious erection and working of a steam cotton press, contiguous to tbe plaintiff’s dwelling, with furnaces, boilers, and fires appurtenant: by which means, and by reason of tbe liability of tbe said boilers to explode, tbe dwelling of the plaintiff bas been rendered unsafe, incommodious, and unfit for habitation, tbe lives of himself and family jeopardized, and be in tbe enjoyment of bis dwelling, annoyed and damnified.
*232 Here tbe erection and working of tbe press, and of boilers liable to explode, constitute tbe injury: tbe danger- to tbe dwelling and its inmates, is tbe intermediate result, and tbe destruction of tbe comfort of tbe habitation thereby produced, is tbe damage.
In considering this motion in arrest of judgment, we must keep to tbe counts in question, and can know nothing of tbe action of Council or of any other matter in tbe evidence. Wrongfully and injuriously preclude all legal cause of excuse. We must by intendment in support of tbe verdict, pre-sup-pose tbe perfect allegation and satisfactory proof of all facts' which are defectively stated, and of all that are plainly infer-rible from what is stated. In a general allegation of wrongful conduct, followed by alleged damage, we must disregard tbe omission of intermediate particulars, by which effect was given to tbe conduct. (Willes,.583, Winsmore vs. Greenbanlc.) We may in this way be led to say, in reference to tbe third count, that, by proximity of tbe large quantities of cotton to the large fires, tbe risk was increased; and- in reference to tbe fourth, that the boilers were more than ordinarily liable to explode, to occasion, tbe danger and consequences alleged. Kisk of barm by fire in one count, and risk of barm by explosion in tbe other, are tbe immediate consequences laid, from which loss is alleged to have ensued; and upon either count tbe question comes at last, whether a plaintiff, without ever having endured tbe actual occurrence of a threatened evil, may found an action, upon tbe danger to which be has been exposed from tbe chance of tbe evil, and tbe hurtful consequences thence resulting to him. I do not put tbe question, whether danger will suffice without actual loss; for in this case actual loss — a dwelling made unfit for habitation and tbe value of property depreciated — is alleged, as tbe proximate and natural consequences of tbe danger wrongfully produced.
In 1752, Lord Hardwicke, upon a motion made by private *233 individuals, (Anon. 3 Atk. 750,) after considering tbe circumstances of the case, refused to grant an injunction to stay the building of a house, intended as a house in which to inoculate for the small pox. He held that if the house should be a nuisance it would be a public one, and that the proper method of proceeding would have been by information in the name of the attorney general: that bills to restrain nuisances must extend to such only as are nuisances at law, and it had not been settled that a house for the reception of inoculated .patients was a nuisance — on the contrary, upon an indictment of that kind, there had then lately been an acquittal. He remarked that, “the fears of mankind, though they may be reasonable ones, will not create a nui- - sanee,” and that, “ it is in the nature of terror to diffuse itself in a very extensive manner.” These remarks only are important now: — the point adjudged resting upon circumstances and observations outside of them.
Pears maybe reasonable, yet be in truth groundless. They denote the impressions made upon the mind by appearances, and those, even when well suited to mislead the judicious, sometimes vary widely from the reality. Actual danger differs from both the fear of an evil, and the evil that is feared. It may exist, and those exposed to it be rinconscious of its existence. When it has' been perceived, the loss occasioned by it is more substantial than a painful emotion of the mind.
Fifteen years after Lord Hardwicke’s refusal of an injunction to prevent the establishment of a house for inoculation, so little were such houses dreaded, when they were well kep>t, that upon an indictment for keeping one, the Court, although it would not quash upon motion, directed a demurrer. (Rex vs. Sutton, 4 Burr. 2116.) Later cases, even after the use of vaccination was generally introduced, have sustained indictments for the public exposure of a small-pox patient, upon principles which extend to all contagious disorders, arid illus- *234 trate tbe distinction between danger and fear. (Rex vs. Vantandillo, 4 Mau. & Sel. 73; Rex vs. Burnett, 4 Mau. & Sel. 272.)
In the People vs. Sands, 1 Johns. R. 78, an indictment for keeping near a public street a bouse with a large quantity of gunpowder in it, to tbe danger of inhabitants and passers, and to tbe common nuisance of all tbe community, was held insufficient, because there was no statement of carelessness or únsuitableness in either tbe bouse or tbe keeper, nor any other allegation of special circumstance in time, place or manner showing tbe danger, and nothing could be intended in aid of an indictment. Yet all tbe judges who so held were of opinion that if by proper allegations tbe danger bad been exhibited, tbe indictment would haye been found. Kent and-Liyingston, two of these judges, (although tbe former adyerts to tbe general disrepute in which 12 Modern is held,) both notice and approve what is attributed to Lord JBColt, {Anon. 12 Mod. 342,) .where be is said to have held, upon an indictment for keeping powder, that to support tbe charge there must be apparent danger or mischief already done. Apparent, if it was used by Lord Holt, must have been here used in its sense oí plain — indubitable, not in that of seeming — not real.
Tbe cases which have been mentioned all related to public nuisances. The one before ■ us is an action on the case for an injury, which, whether called a private nuisance or not, is alleged to have occasioned actual loss by depreciation of property and annoyance of habitation: and the question resolves itself into this, whether this loss is made no legal damage, by the circumstance that it has come through the intervention of danger produced, and not of evil actually endured. If common danger may constitute a public nuisance, why should not peculiar danger maintain an action for the special loss it has -occasioned? Any tainting of the atmosphere, any offence to the sense of smelling, any immission of disagreeable substances, however subtile, perceived by the *235 senses,- may give cause of action: — a deleterious substance, not perceptible to the senses, as miasma from decaying vegetables, or mercury in a gaseous form, differs only in evidence. If its actual existence and penetration of a bouse, and its dangerous nature can be established, it will appear to affect the health and annoy the habitation, in kind if not in degree, the same as gas from coke-works, or from a manu-factory of sulphuric acid, would do. Upon this motion in arrest of judgment, the Reality of the danger and the harm it has done, must be taken as proved. In questions before a jury, fears would be disregarded until sufficient grounds for them had been shown, and in all cases a high degree of probability that the evil dreaded would actually occur, would be required to constitute actual danger: although of extreme ills less chance might be expected to be endured, than of ills whose probable consequences would not be so disastrous. Eeal danger of great ill no prudent man would abide, and therefore it may be legally considered to produce the losses which the fears of it, and the efforts to avoid it, occasion. Between it and the hazard, which may excite fear, but which the constant man becomes habituated to forget, there is a difference similar to that which the law recognises between an assault and an insulting gesture: and between the real danger and the evil already happened, not more difference than between an assault and a battery. It is not to be conceived that one might build a powder mill near to the habitation of another, without ‘giving cause of action before an explosion; nor that one might, without incurring responsibility in a private action before he had caused the burning of his neighbor’s house, keep in an open space near to that house a great fire in the midst of barrels of turpentine. It is true that every one must be allowed reasonably to use his own, although some annoyance may thereby be occasioned to another: and it is true that some increase of the risk of fire is brought upon a house by any other wooden house placed *236 near it, more especially if some dangerous trade is carried on in the said bouse, or its occupant is a careless person; and for such, increase of risk a plaintiff should not obtain a verdict. But if in such a case, an action should be brought, and upon the allegation of wrongful erection by the defendant, and of danger thence produced from which damage had resulted, a verdict for the plaintiff should be found, a motion in arrest of judgment would meet with difficulties, which neither a demurrer nor a defence on the merits could have encountered.
The determination of the Court to refuse the motion in arrest of judgment, has been somewhat fortified by the manifest reference to the first and second counts, which the jury have made by their recommendation concerning the exhaust pipes. It is not altogether clear that the ejections from the pipe, which are not at all mentioned in the third and fourth counts, did not enter into the assessment of damages, although the jury say that they find for the plaintiff on these counts. If in truth, other counts, less questionable, were considered ,in the assessment, the judgment ought not to be arrested .even if the counts said to be found for the plaintiff were insufficient — especially as there is no express finding of the other counts for'the defendant.
Coming, then, to the motion for a new trial, we might rest .the grant of it solely upon the contradictory nature of the verdict, which has been pointed out in the report. In a matter of so much importance, i't should not be uncertain what the jury meant. As the grounds of appeal do not, however, allude to the form of the verdict, we look beyond this. We do not find in the evidence any proof as to some of the facts which, in our consideration of the former motion, were taken as proved. Neither dangerous proximity of the cotton to the fire, nor any special liability of the boilers to explode, is in the testimony of any witness. The danger either of fire or of explosion, does not appear to have lessened the number *237 of inmates in tbe plaintiff’s bonse, nor to bave brought its price mncb below tbe double of tbe City assessment. There is no evidence concerning smoke, soot, and vapor. These might possibly bave been prevented in tbe working of tbe defendant’s machinery: whether they would have been or not, the plaintiff was not bound to endure them, if they exceeded those unavoidable annoyances, which in a crowded part of a city, every one must suffer from his neighbors’ use of their own. These, if so excessive, and if not necessarily incident to a steam cotton press, have not been licensed by tbe City Council; if so incident, could not have been licensed unreasonably to annoy the plaintiff: — for in that case, they constituted in themselves violations of his absolute right, which the Council could not legalize.
The steam engine is not of itself a nuisance. So common and valuable has it become, that public policy suggests caution in doing what may interrupt its use. But in reference to an engine itself, and to any useful machinery propelled by it, there is justice in holding that one set of citizens should not be burdened or annoyed for the benefit of others. In view of the different conclusions about nuisance reached by the law, according to differences of place, of modes of proceeding, and of other circumstances, it is wise that every business, where necessary incidents are likely to annoy the neighborhood in which it is conducted, should be subject to such regulations ■ as may make it comparatively harmless. And in the City of Charleston, where rulers are elected by those over whom they exercise authority, and are entrusted with large powers by the legislature, it would have been strange if steam engines had not attracted the notice of Council. The ordinance concerning them, which the defendant has adduced in his behalf, is one which the Court would most unwillingly restrain. Under it and the action of the Council, he may well say that his cotton press has been licensed, and that its continued existence affords evidence of *238 its continued approval. But every license, express or implied, may be abused, and the license does not sanction the abuse; as, for instance, a license to retail spirituous liquors is .no bar to an indictment for keeping a disorderly house. Actual damage done to the plaintiff, and not excused under the circumstances by the law, cannot be justified by the license of the Council: but in considering whether his neighborhood was a fit one for a cotton press, whether he has been unreasonably endangered, and whether the annoyances from the defendant’s business arise to such degree as to constitute a private nuisance, (which are in some measure questions of opinion,) the action of the Council is, as evidence, entitled to higher estimation than the opinions of private individuals. The mayor and aldermen are the representatives of the City, and a citizen who has made an investment under their authority, after consulting them in a matter entrusted to their judgment, should not be readily found guilty of doing wrong by creating danger which they do not apprehend, or producing annoyances which they do not perceive.
The motion for a new trial is granted.
Withers, WhttNer, Glover, and Muhro, JJ., concurred.

New Trial ordered.