9926

KIRKLAND DISTRIBUTING CO. v. SEABOARD AIR LINE RY.

(96 S. E. 122.)

1. WATERS AND WATERCOURSES—DISCHARGING SURFACE WATERS—LIABIL-
ITY.—Where railroad by contract with private owner built a spur
track in a cut, resulting in discharge of unusual quantities of sur-
face water upon the land of the owner, at whose request the track
was built, the railroad's liability was determinable according to the
law applicable to private parties.

2. WATERS AND WATERCOURSES—DISCHARGING SURFACE WATERS—LIABIL-
ITY.—Where railroad constructed spur track to plant at request of
owner and according to his desires, but under objection by the rail-
road that no drainage could be provided for, it was not liable when
surface waters flooded the plant.

3. WATERS AND WATERCOURSES—DISCHARGING SURFACE WATERS—LIABIL-
ITY.—Principles that no one may accumulate storm water on his land
so as to throw it on his neighbor in concentrated form and force, to
the neighbor's injury, cannot be successfully invoked by one who
contracts with his neighbor to do something from which injury results
to him as an incidental, if not necessary, consequence of the act.

Before SHIPP, J., Richland, Fall term, 1916.    Affirmed.

Action by the Kirkland Distributing Company against the Seaboard Air Line Railway.    Judgment on directed verdict for defendant, and plaintiff appeals

*Messrs. Thomas & Lumpkin,* for appellant, cite: *As to negligence of defendant in failing to provide drainage to carry off water on a track, which it had built for its own purposes:* 87 S. C. 424; 54 S. C. 242; 62 S. C. 22; 62 S. C. 25. *It is the well settled law of this State that prior or contemporaneous negotiations are merged into the written instrument, whereby the parties have evidenced their contract:* 77 S. C. 188.

*Messrs. Lyles & Lyles,* for respondent.

March 18, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff brought this action to recover of defendant damages done to its warehouse and goods stored therein by storm water which conveyed to the warehouse by and along a spur track on defendant's right of way, which is contiguous to the warehouse along its eastern side.    The spur track was built by defendant, according to a contract with plaintiff, for their mutual benefit.

Plaintiff's warehouse is situated on the southeast corner of Lincoln and Lady streets, in the city of Columbia, and extends from Lincoln street to defendant's right of way on the east.    The ground in that locality slopes toward the south and west.    In 1913, before the warehouse was built, defendant built a sidetrack which leaves its main line south of Gervais street and runs in a northeasterly direction across Gervais and Lady streets, crossing the latter about 20 feet east of plaintiff's warehouse.    This sidetrack is on an ascending grade, and until the spur track to plaintiff's ware-

house was built it was in a cut all the way from. Gervais to Lady, which it crosses at grade, but in a slight depression; so that, prior to the construction of the spur track, storm water that fell on the sidetrack, and any that ran into it from Lady street, flowed down the sidetrack into Gervais street, and none of it could get to plaintiff's lot.

The grade of this sidetrack and the manner of its construction across Lady street, including the provisions made for carrying off the storm water that came down Lady street, were determined by the city engineer, and the construction thereof was in accordance with his requirements, which, according to the undisputed evidence, were proper and adequate for the purpose.

About a year after this sidetrack had been completed plaintiff had an architect prepare the plans for its warehouse, so that the first floor above the cellar would be the right height above the level of Lincoln street for the convenient loading of wagons on that side, and also for the unloading of cars into the warehouse from a spur track on the opposite side.   But, to conform to this plant, the spur track had to be constructed so that cars standing on it would be on a level with the floor of the warehouse, which made it necessary to put it on a descending grade from its junction with the sidetrack, which is about midway between Gervais and Lady streets, to its end on the south side of Lady street, where it is some three or four feet below the level of the street and the sidetrack.

When plaintiff applied to defendant to construct the spur track according to this plan, defendant objected, and wanted to put it on the same grade with the sidetrack.   The objections to the proposed plan urged by defendant, so far as they appear from the correspondence between plaintiff's architect and defendant's engineer, were the hazard of operation and the necessity of building a retaining wall between the sidetrack and spur track.   But one of defendant's engineers testified that, at a conference between plaintiff's architect

and defendant's engineer, the latter urged the further objection that the proposed grade would throw the drainage of the tracks towards the warehouse, and that it would be impossible for defendant to provide for the drainage, because it did not own the adjacent property, and he further testified that, to obviate that objection, plaintiff's architect agreed that plaintiff would take care of the drainage through the cellar drainage of the warehouse. This testimony was not contradicted by the plaintiff's architect, but the president of the plaintiff company denied that any such agreement was made while he was present, though he admitted that the matter of drainage might have been discussed while he was present.

Nevertheless the testimony and the correspondence between the parties shows that plaintiff insisted that the spur track should be constructed to conform to plaintiff's wishes and the plan of its warehouse. Plaintiff's architect expressed it thus in a letter to defendant's engineer:

"The grade of the sidetrack is not worrying us, but it is the level of the track with reference to the driveway. The situation will lose all of its value for the purpose unless we can arrange to unload cars and load wagons economically."

Defendant finally agreed to and did construct it as plaintiff wanted it.

During a heavy rainstorm, in July, 1914, the water came down the track in such volume and force that it broke through the cellar windows and flooded the cellar of the warehouse, doing considerable damage to the building and goods stored therein.

Plaintiff's testimony tended to show that some of the water that ran into the warehouse was water that would naturally have flowed down Lady street, if it had not been diverted by the sidetrack at the crossing, and conducted thence to the spur track, and thence along the spur track to the warehouse. Therefore the plaintiff contends that the provisions for carrying off the storm water that fell upon

and flowed into Lady street above the sidetrack were insufficient, or so negligently constructed that defendant is liable for the damage caused thereby.

The Circuit Court held that, as the spur track was constructed as plaintiff wanted and insisted that it should be, defendant was not liable and directed the verdict accordingly.

The first question to be considered is whether, in constructing the spur track, defendant incurred the liability to plaintiff which a railroad company, acting under its charter rights, ordinarily incurs to a member of the public whose property may be damaged by the construction of its roadbed and tracks, or whether the rights of the parties must be determined under their contract as one between private individuals, and the law applicable to that relation. The Circuit Court took the latter view, and we think correctly.

While we agree with appellant that defendant built the spur track partly for his own benefit, as a public service corporation and common carrier, in the hope and expectation that its business as such would thereby be promoted, nevertheless defendant was under no legal duty to the public, nor to plaintiff, as a member of the public, to build it. Therefore it could have declined to build it at all. It follows that the law applicable to private parties similarly situated, should be applied to determine their rights and liabilities.

That beng so, and the contract being silent as to the matter of drainage, this question arises: Did the law impose that duty upon defendant, under the circumstances? We think not. It must be borne in mind that the damage complained of was not the result of any breach of the contract, or any negligence in its performance, but was merely an incidental and natural, if not necessary, consequence of constructing the spur track as plaintiff wanted it and insisted on having it, and that, too, notwithstanding defendant's objection to that plan, based on the

ground that it could not take care of the water for the reason stated, which the circumstances, known to plaintiff, made apparent.

Appellant contends that defendant's liability could and ought to be predicated on the principle, which has frequently been affirmed by this Court, that no one may accumulate storm water upon his land so as to throw it upon his neighbor in concentrated form and force to the injury of the latter. But that principle cannot be successfully invoked by one who contracts with his neighbor to do something from which injury results to him as an incidental, if not a necessary consequence of doing that thing. Plaintiff knew that water would flow down hill, and that the sidetrack and spur track were both on descending grades toward its warehouse, and the president of plaintiff company had in mind the necessity of providing for drainage under these circumstances, because he testified that the plaintiff did not provide for it, because he thought it was defendant's duty to do so. In that he was mistaken.

Judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

Dissenting opinion by MR. JUSTICE GAGE.

I dissent. The testimony made issues of fact which, if true, rendered the defendant liable to the plaintiff for tort. The suit is not for a continuing and permanent wrong, but is for a specific overflow of rainwater into the plaintiff's warehouse basement, which damaged the plaintiff's merchandise to the extent of $500.

The defendant's sidetrack across Lady street was built prior to August, 1913; and its building had no relevancy whatever to the plaintiff's enterprise of a warehouse, which was erected a year afterwards.

The presence of the spur was not the cause of the overflow into the plaintiff's basement; it was only an incident. Before the construction of the sidetrack across Lady street the surface water running down hill along Lady street, from north to south, was accustomed to pass unobstructed in drains down the south side of Lady street. That water could not then turn south out of the drains and flow onto the abutting land. But when the sidetrack was built across Lady street the manner of its construction offered resistance to the water's flow, and the water turned south over the defendant's land and into the excavation which the plaintiff had made of right. The water would have gone into that excavation had there been no spur excavation; the circumstance is altogether irrelevant that the water reached first the spur excavation before it reached the warehouse excavation. Mr. Kirkland was present on the day of the overflow, and he testified thus:

"Q. State from your observation on the day of this trouble what was the direct cause of your damage? A. The direct cause, the Seaboard track ran across Lady street, formed a ditch, the water came down Lady street, it struck the Seaboard track, turned it, ran it in my place, no way else for it to go."

The engineer for the plaintiff testified thus about the same matter:

"The sidetrack where it crosses Lady street is lower than the level of the street, and, therefore, when the water would run down Lady street in times of rain, it would stop at the sidetrack, turn south and run into the block east and just above plaintiff's warehouse. The sidetrack of the defendant is lower on the south side of Lady street than on the north side of Lady street."

There is no testimony to the contrary. It is true the engineer of the defendant testified that the grade of the sidetrack across Lady street was fixed by the city engineer. But the city engineer had no authority to authorize such a cross-

ing of the street as would divert water from the street onto the plaintiff's land. When the defendant crossed Lady street the law cast upon it the duty to take care of the rainfall in the street at that place. The plaintiff had nothing to do with that; and there is no evidence that the plaintiff made any promise to take care of any diversion of water at a point in the street. Whatever promise the plaintiff, through Lafaye, made to the defendant was with reference to a care for water which reached the spur excavation; there was no semblance of a promise to see that water would not reach the spur excavation from Lady street. If the construction across Lady street was negligent, and that was for the jury, and if that caused the diversion of water out of the street drains into the plaintiff's excavation, and that was for the jury, then the defendant is liable for the damage done by the water.

The order of nonsuit ought to be set aside, and the cause remanded for trial.