2028

R. Keith JOHNSON, Trustee, Respondent v.
Robert B. PHILLIPS, Andrew F. Phillips, and Opal B. Phillips, Appellants.

(433 S.E. (2d) 895)

Court of Appeals

*Desa A. Ballard,* of *Ness, Motley, Loadholt, Richardson & Poole,* Barnwell, *for appellants.*

*Stephen R. McCrae, Jr.,* of *Kennedy, Covington, Lobdell & Hickman,* Rock Hill, *for respondent.*

Heard Feb. 24, 1993; Decided June 7, 1993.

Reh. Den. Aug. 11, 1993.

Bell, Judge:

This is a dispute between adjacent landowners over the diversion of surface water caused by the development of a residential subdivision. Donald E. Smith and Mary S. Mercer,[1] tenants in common of a tract of land in the City of Rock Hill known as the Royal Oaks Subdivision, sued Robert B. Phillips, Andrew F. Phillips, and Opal B. Phillips, tenants in common of the tract bordering Royal Oaks on the south. The complaint alleged causes of action for interference with a prescriptive easement, private nuisance, and trespass. It sought both injunctive relief and actual and punitive damages. The Phillipses answered, denying the material allegations of the complaint and counterclaimed for unlawful discharge of surface water on their land. They sought actual and punitive damages and injunctive relief. The legal claims for damages were tried to a jury. At the close of the evidence, the court found that Smith had a legal right to discharge surface water onto the Phillipses' land and that there was no evidence Smith had discharged surface water in a concentrated form so as to create a nuisance. Consequently, the court directed a verdict against the Phillipses on their counterclaim. The court submitted the Smith claims for trespass and nuisance to the jury. The jury returned a verdict for the Phillipses on the trespass causes of action. On the nuisance causes of action their verdict was: "for the Plaintiffs [Smith] actual damages in the sum of no Dollars." The court accepted the verdicts and then enjoined the Phillipses to abate the alleged nuisance by removing certain structures from their land and restoring it to its former condition. The Phillipses appeal. We reverse and remand.

The Smith property, Royal Oaks, bounds the Phillipses' property on the north. Both tracts lie within an eighty-eight acre natural drainage basin over which a number of watercourses flow. These are fed by underground springs and surface water flowing from the upper reaches of the drainage basin through Royal Oaks and onto the Phillipses' tract. In the

---

[1] Smith and Mercer are husband and wife. They filed for Chapter 7 bankruptcy in May 1992. R. Keith Johnson, their bankruptcy trustee, was substituted as a party to this action after the appeal was commenced. For convenience, we refer to Smith, Mercer, and Johnson as "Smith" in this opinion.

1050's, a pond was constructed on the Royal Oaks tract. The pond collects surface water and discharges it through a man-made drainage system whence it continues flowing onto the Phillipses property. In 1970, the Phillipses also built a pond, lower in elevation than the Royal Oaks pond, on their land.

Smith began construction on the Royal Oaks tract in March, 1988. Among other things, Smith reduced the surface area of the Royal Oaks pond by almost one half, but excavated it to a greater depth so that it held about the same volume of water. He installed storm water culverts and pipes, some of which directed water into the Royal Oaks pond and others of which discharged water below the Royal Oaks pond, 100 feet north of the Phillipses' tract. Smith also built a new spillway and weir to disperse water as it overflowed the pond. He placed rip-rap rock at the points of discharge of the new drainage pipes south of the Royal Oaks pond to disperse the concentration of water being discharged before it reached the Phillipses' tract. Finally, Smith built a three-foot ditch under the driveway entrance to Royal Oaks along Quiet Acres Road. This ditch discharged surface water onto a Royal Oaks lot before it flowed onto the Phillipses' tract. The completed Royal Oaks drainage system admittedly increased the flow of surface water by about 15% in volume. Uncontradicted evidence established that the Royal Oaks construction was done in compliance with all regulations of the City of Rock Hill and the South Carolina Department of Health and Environmental Control, and was done according to good engineering standards.

In response to the construction on the Royal Oaks tract, the Phillipses raised the level of their pond so that it backed water onto Royal Oaks. In August, 1988, the Phillipses also began to construct an earthen berm along their boundary with Royal Oaks to prevent the flow of surface water onto their property from the drainage ditch along Quiet Acres Road. This caused surface water to back up and pond on Royal Oaks near the entrance to the subdivision. In March, 1989, the Phillipses began building up the causeway across their pond, eventually raising its height as much as twelve feet and blocking a fifteen-inch drain pipe through the causeway so that surface water could no longer flow downstream. This caused water to back onto Royal Oaks, flooding the land

south of the Royal Oaks pond, the weir and discharge pipes, the rip-rap, and five lots around the pond. The backed-up water was stagnant and became a breeding ground for mosquitoes.

The appeal presents two questions for our decision: (1) Did the court err in directing a verdict on the Phillipses' counterclaim because the evidence was susceptible of more than one reasonable inference? (2) Did the court err in granting injunctive relief to Smith on a jury verdict for "no dollars"?

## I.

The parties agree that South Carolina follows the English common law (or so called "common enemy" rule) regarding diversion of surface waters naturally flowing across land. In the leading case of *Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 32 S.E. 358, 71 Am. St. Rep. 789 (1899),[2] the Supreme Court held that under the English rule the right of the owner of land to improve it, by changing its surface or erecting buildings and other structures on it, is not restricted merely because the improvement will cause surface water which naturally flows or accumulates on his land either to stand in unusual quantities on his neighbor's adjacent lands or to pass onto and over them in greater quantities and in other directions than it was accustomed to flow. The Court went on to say it is not material whether a party obstructs or changes the direction and flow of surface water by preventing it from coming within the limits of his land or by erecting barriers or changing the level of the soil so as to turn it off in a new course after it has come within his boundaries. The obstruction of surface water or an alteration in its flow, affords no cause of action to a person who suffers loss or detriment therefrom against one who does not act inconsistent with the lawful exercise of dominion over his own soil.[3] The law expects every landowner to anticipate uses being made of adjoining

---

[2] The rule was first adopted in *Edwards v. Charlotte, Columbia & Augusta Ry. Co.*, 39 S.C. 472, 18 S.E. 58, 22 L.R.A. 246, 39 Am. St. Rep. 746 (1893), an action to abate a public nuisance.

[3] Although it has been argued that the common-law rule should be modified or abandoned, recent South Carolina decisions adhere to the classical formulation of the rule. *See Irwin v. Michelin Tire Corp.*, 288 S.C. 221, 341 S.E. (2d) 783 (1986); *Williams v. Skipper*, 284 S.C. 261, 325 S.E. (2d) 577 (Ct. App. 1985).

lands consistent with law, even though unpleasant and harmful to him, and to prevent that possibility by extending his domain or to indemnify himself against it by seeking to abate the price when he purchases his land. *McLauchlin v. Charlotte & South Carolina R.R. Co.*, 39 S.C.L. (5 Rich.) 583 (1850).

The "common enemy" rule does not apply in two types of cases. First, the rule is subject to the general law of nuisance. Thus, if the obstruction or alteration of the flow of surface water creates a nuisance, it does not come within the rule. *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 32 S.E. 358, 71 Am. St. Rep. 789 (1899). Second, except by contractual or prescriptive right,[4] an upper landowner may not by means of a ditch, impoundment, or other artificial structure collect surface water on his land and cast it in concentrated form upon lower adjoining land. *See Brandenburg v. Zeigler*, 62 S.C. 18, 39 S.E. 790, 55 L.R.A. 414, 89 Am. St. Rep. 887 (1901); *Slater v. Price*, 96 S.C. 245, 80 S.E. 372 (1913).

In this case, the circuit court granted the directed verdict against the Phillipses after finding Smith had a right to discharge surface water onto their land and also finding there was no evidence Smith discharged water in concentrated form or so as to create a nuisance. In ruling on a motion for a directed verdict, the court must view the evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Snow v. City of Columbia*, 305 S.C. 544, 409 S.E. (2d) 797 (Ct. App. 1991), *cert. denied*, (S.C. Sup. Ct. filed Feb. 4, 1992). If the evidence is susceptible of more than one reasonable inference, the court may not grant a directed verdict. *See id.*

We reverse the granting of the directed verdict. Since the case must be retried, we refrain from commenting on the evidence in detail. However, the evidence viewed in the light most favorable to the Phillipses permits a reasonable inference that Smith, by means of ditches and drainage structures he built on Royal Oaks, collected surface water on his land and cast it in concentrated form on the lower Phillipses' tract. In reaching this conclusion, we do not,

---

[4] *See Kirkland Distributing Co. v. Seaboard Airline Ry.*, 109 S.C. 331, 96 S.E. 122 (1918) (contract); *Hays v. Hoffman*, 162 S.C. 284, 160 S.E. 852 (1931) (prescription).

of course, suggest the evidence preponderates one way or the other. We only find that some evidence exists to support the counterclaim on this issue. Thus it was an issue for the jury, not for the court. *See Standard Warehouse Co. v. Atlantic Coast Line R. Co.*, 222 S.C. 93, 71 S.E. (2d) 893 (1952).

If, as a matter of fact, Smith was discharging water in concentrated form on the Phillipses' land, then it would also be necessary to decide whether Smith had a right, by contract or prescription, to do so. We are confident the evidence did not establish—to the exclusion of any other inference—that Smith had a prescriptive right to concentrate and drain surface water onto the Phillipses' tract. We are equally confident the evidence did not prove—to the exclusion of any other inference—a contract between Smith and the Phillipses permitting Smith to discharge artificially concentrated surface water onto the lower tract. Consequently, the circuit court erred in finding, as a matter of law, that Smith had a right to discharge surface water onto the Phillipses' tract. The law required him to let the jury determine that issue also. *Cf. Abrams v. Wright*, 262 S.C. 141, 202 S.E. (2d) 859 (1974) (summary judgment).

## II.

We next address the issue of entering judgment for Smith on a verdict of "no dollars" in damages. The Phillipses contend the court committed an abuse of discretion based on errors of law in granting Smith affirmative relief on such a verdict.

Historically, the common law has recognized various causes of action to protect the owner of land in the quiet enjoyment of his property. An action for trespass will lie for wrongful interference with the owner's right to peaceable and exclusive possession of his land. *See Charleston Joint Venture v. McPherson*, — S.C. —, 417 S.E. (2d) 544 (1992); *Lane v. Mims*, 221 S.C. 236, 70 S.E. (2d) 244 (1952); C.H.S. Fifoot, HISTORY AND SOURCES OF THE COMMON LAW; TORT AND CONTRACT, 44-56, 184-95 (1949). An action for private nuisance will lie for wrongful interference with the owner's right to free use and enjoyment of his land. *See Strong v. Winn-Dixie Stores, Inc.*, 240 S.C. 244, 125 S.E. (2d) 628 (1962); *Lever v Wilder Mobile Homes, Inc.*, 283 S.C. 452, 322 S.E. (2d) 692 (Ct. App. 1984); Fifoot HISTORY

AND SOURCES, 3-11, 93-96. As with trespass,[5] if a private nuisance is shown to exist, the law imports damages for injury to the right of free use and enjoyment, and at least nominal damages may be recovered to protect the right. *Farley v. Gate City Gaslight Co.*, 105 Ga. 323, 31 S.E. 193 (1898); C. Mc-Cormick THE LAW OF DAMAGES, 87-88 (1935).[6]

In this case, the jury returned a verdict in nuisance of "no dollars" actual damages for the plaintiff. As a matter of law, this was either an inconsistent or an incomplete verdict. If the jury found the defendant did not unlawfully interfere with the plaintiff's use and enjoyment of his land, even though the diversion of surface water was annoying or harmful to him, the verdict was legally inconsistent. On that view of the evidence, the verdict should have been for the defendant. If the jury found an unlawful interference amounting to a private nuisance, but no actual damage resulting to the plaintiff, it should have returned a verdict for the plaintiff and awarded nominal damages (i.e., one dollar). If it found unlawful interference resulting in actual damage to the plaintiff, even if the amount of damage was difficult to ascertain, the jury had a duty to return a verdict for the plaintiff and to

---

[5] *See Snow v. City of Columbia*, 305 S.C. 544, 409 S.E. (2d) 797, 802 (Ct. App. 1991), *cert. denied* (S.C. Sup. Ct. filed Feb. 4, 1992).

[6] Under the common law of South Carolina, the cause of action for private nuisance was historically an action on the case. *See Ryan v. Copes*, 45 S.C.L. (11 Rich.) 217, 73 Am. Dec. 106 (1858). In an action on the case, the gist of the action was actual damage, and unless the plaintiff pleaded and proved actual damage, no action would lie. *See, e.g., McGlamery v. Jackson*, 67 W.Va. 417, 68 S.E. 105 (1910); W. Prosser, THE LAW OF TORTS, 4th ed., 28-29 (1971); B. Shipman, COMMON-LAW PLEADING, 2d ed., 214, 223 (1923). This is still the rule in actions for negligence and certain other torts which derive historically from the action on the case. *See Sullivan v. Old Colony St. Ry. Co.*, 200 Mass. 303, 86 N.E. 511 (1908); *Richardson's Restaurants, Inc. v. National Bank of South Carolina*, 304 W.C. 289, 403 S.E. (2d) 669 (Ct. App. 1991); C. McCormick, DAMAGES, 88-89. However, it is generally held in the modern common law that a private nuisance, like a trespass to land, is actionable *per se*, so that the action will lie and nominal damages may be recovered regardless of actual loss to the landowner. *See, e.g., Farley v. Gate City Gaslight Co.*, 105 Ga. 323, 31 S.E. 193 (1898); *Swift v. Broyles*, 115 Ga. 885, 42 S.E. 277 (1902); *Southland Co. v. Aaron*, 224 Miss. 780, 80 So. (2d) 823 (1955); C. McCormick, DAMAGES, 88-89. *Contra Hanna v. Brady*, 73 N.C. App. 521, 327 S.E. (2d) 22 (1985). This is clearly the better rule. From its earliest history, the common law has been vigilant to protect rights of private property and liberty and safety of the person. At common law, both trespass to land and nuisance were actionable *per se* long before the evolution of the ac-

award damages in a specific dollar amount that, in its best judgment, based on the evidence before it, would compensate the plaintiff for his actual loss. Having found the fact of damage, the jury was required to find the amount of damage. In either of these later cases, a verdict of "no dollars" for the plaintiff is legally incomplete. Since the defendant is liable for violating the plaintiff's substantive right, the plaintiff is entitled by law to an award of damages.

The court cannot lawfully enter judgment on an inconsistent or incomplete verdict. *Clement v. Lewis* (1822) 3 Brod. & B. 297, 129 Eng. Rep. 1299; *Malmberg v. Lopez*, 208 Conn. 675, 546 A. (2d) 264 (1988); *Costerisan v. Tejon Ranch Co.*, 255 Cal. App. (2d) 57, 62 Cal. Rptr. 800 (1967). When, as here, the jury returns a verdict of "no damages" for the plaintiff, the judge should inform them that he cannot legally accept the verdict, and should return the case to them with instructions explaining nominal and compensatory damages and charging them either to assess a definite dollar amount in damages (nominal or actual) for the plaintiff or to return a verdict for the defendant. *CF. Marr v. Nagel*, 59 N.M. 21, 278 P. (2d) 561 (1954).[7]

Finally, because the issue may arise on retrial of the case,

---

tion on the case. C.H.S. Fifoot, HISTORY AND SOURCES OF THE COMMON LAW: TORT AND CONTRACT, 3 (1949). The requirement that actual damage is an essential element of an action on the case originated as a rule of pleading rather than as a substantive doctrine. More than a century after common-law pleading and forms of action were abolished in South Carolina, there is little reason for the right to vindicate substantive interests arising from private ownership of land should be cut off by obsolete rules of pleading. We are aware that in *Frost v. Berkeley Phosphate Co.*, 42 S.C. 403, 404, 20 S.E. 280, 281 (1894), Aldrich, J., charged the jury that in an action for private nuisance the injury must be a positive, direct injury, and the damages must be actual and substantial for the plaintiff to recover. *See also* H. Wood, THE LAW OF NUISANCES, 2d ed., 8-10 (1883). However, the Supreme Court reversed on another ground without discussing that portion of the charge and no decision of the Supreme Court has ever approved this view. Accordingly, we are of the opinion that South Carolina follows the general common-law rule that no actual damages must be pleaded or proved to establish a cause of action in private nuisance. *See* C. McCormick DAMAGES, 89-90. Of course, this does not obviate the requirement that special, as distinct from general, damages must be pleaded and proved. Likewise, it does not affect the rule that special damages must be pleaded and proved in an action for public nuisance.

[7] We are aware there is a split of authority as to how a court should treat a verdict for no damages, with some jurisdictions holding that it is the equiva-

we address the Phillipses' argument that the court erred in granting a mandatory injunction when the jury found Smith was not damaged by their conduct.

An injunction, like all equitable remedies, is granted as a matter of sound judicial discretion, not as a matter of legal right. *Metts v. Wenberg*, 158 S.C. 411, 155 S.E. 734 (1930). A mandatory injunction is an especially drastic remedy and is rarely granted. *Forest Land Co. v. Black*, 216 S.C. 255, 57 S.E. (2d) 420 (1950). In most cases, if the damage suffered by the party seeking a mandatory injunction is very small, a mandatory injunction is unduly oppressive and not in accordance with the principles upon which equitable relief is usually granted. *Colls v. Home and Colonial Stores, Ltd.*, [1904] A.C. 179, 211-12 (per Lord Lindley). Thus, in an action for private nuisance where the damage is nominal, the granting of a mandatory injunction, except in highly unusual circumstances, is an abuse of discretion.

The principle is well illustrated by this case. If, in fact, the Phillipses created a private nuisance, but it resulted in no actual damage to Smith, it would be inequitable to require them to spend thousands of dollars to return their land to its pre-1988 condition when Smith had suffered no appreciable loss. In such circumstances, the balance of equities would clearly weight against issuing a mandatory injunction, because the economic detriment to the plaintiff would substantially exceed the economic benefit to the defendant. Equity would be better served by leaving the parties in the status quo.

For the reasons given, we reverse the judgment of the cir-

---

lent of a plaintiff's verdict and others construing it as a verdict for the defendant. *See, e.g., Royal Indemnity Co. v. Island Lake Township*, 177 Minn. 408, 225 N.W. 291 (1929); Annotation, *Verdict for Money Judgment Which Finds for Party for Ambiguous or No Amount*, 49 A.L.R. (2d) 1328 (1956). Neither rule is consistent with South Carolina law, which requires the jury to be the sole judge of issues of fact, including the issue of damages. *See, e.g., Collier v. Green*, 244 S.C. 367, 137 S.E. (2d) 277 (1964); *Gwathmey v. Foor Hotel Co.*, 121 S.C. 237, 113 S.E. 688 (1922). To permit the court to "correct" or "construe" a jury finding of no damages would, as a practical matter, displace the jury as the fact finder by allowing the court either to decide how the jury viewed the facts or to substitute its own view of the facts when the jury's verdict is uncertain. Under our law, where the case is tried to a jury, the judge cannot perform the jury's function for it. If the jury renders an ambiguous verdict, the court must resubmit the case to the jury, not act as a substitute for the jury.

cuit court and remand the matter for a new trial on the claims of Smith and the counterclaim of the Phillipses.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.