0058

Robert M. SUDDETH, Appellant, v. Everett A. KNIGHT, Thomas J. Salisbury, and Town of Summerville, a Body Politic and Corporate, created and existing under the laws of the State of South Carolina, of whom Everett A. Knight and Thomas J. Salisbury are the Respondents.

(314 S. E. (2d) 11)

Court of Appeals

*H. C. Prettyman, Jr.*, and *James H. Abrams, Jr.*, of *Prettyman, Cordray & Abrams*, of Summerville, *for appellant.*

*George E. Campsen, Jr.*, Charleston, *for respondents.*

Heard Nov. 15, 1983.

Decided Jan. 30, 1984.

CURETON, Judge:

Appellant Robert M. Suddeth appeals from the order of the trial judge granting respondents Knight's and Salisbury's motion for an involuntary nonsuit in Suddeth's action for damages for the mishandling of surface water. We reverse the order of the lower court and remand for a new trial.

Suddeth's complaint seeks damages against the respondents on two grounds: (1) that the respondents constructed a ditch and drainage system in such a manner that surface waters were collected, and cast in concentrated form upon his land, and (2) that the respondents blocked a water course, thereby causing the ponding of water on his property which constituted a nuisance. The town of Summerville was dismissed by consent of the parties.

Suddeth testified that he began residing on his property in 1958 when there were no other houses in the area. At that time, surface water drained from his property into open ditches. Sometime prior to 1970, one Wallinger built a house in the area and received permission from the Town Council of Summerville to fill in the ditch in question from point A to point B.[1] Thereafter, respondents purchased the Wallinger and other property and began to develop a subdivision.

After a heavy rain in early 1970, Suddeth's property flooded. He called Knight who reopened the ditch, and Suddeth's land again drained properly.

Respondents continued to develop their subdivision and in 1973, again closed the ditch and installed a concrete pipe to carry water from point A along the ditch to a junction box at point B. Subsequently, after a heavy rain, Suddeth's property flooded and this suit followed.

Prior to trial and in an apparent effort to avert a fullfledged hearing whereby each side in the controversy would present lay and expert evidence to support their respective positions, the parties consented, and a circuit judge ordered, that three engineers (one selected by each party and a third by the two) would make studies "to determine the cause and responsibility of the surface water problem . . . and the solution thereto." The judge further ordered that the report of the engineers "shall be admitted in any trial of the within matter and that no other professional opinions or expert testimony shall be offered nor admitted." The order ends with the provision that "the parties . . . agree to be bound by a majority report of the engineers designated herein."

The engineers reported that "the source of the water comes from periodic rains falling on the property with some water in

---

[1] See Plat attached as Exhibit 1.

extreme circumstances coming from Salisbury Drive." The report further stated that flooding was caused by the manner in which the pipe was laid from point A to point B with no fall. In fact, they found the pipe rose .02 feet from point A to point B. Additionally, they found that from the junction box at point B another pipe runs to point C and that the fall of that pipe line was only .12 feet in a 422 foot run. They concluded that the fall of both the pipe from point A to point B and the pipe from point B to point C were insufficient to insure surface drainage from adjoining properties. Further, they concluded:

> The piping of these previously open ditches have precluded surface drainage overland into the ditches in addition to causing an elevated ground water table by preventing natural sub-surface drainage in the direction of lease (sic) resistance. (i.e. ditch).

At trial, a question arose as to the interpretation of the provision of the consent order that the parties would be "bound by a majority report of the engineers." Suddeth contended that the provision simply precluded "expert testimony" as to the source of the water problem but did not preclude lay testimony on the point. On the other hand, respondents contended that the provision precluded all testimony as to the source of the problem, except the Engineers' Report.

The trial judge interpreted the order to preclude the testimony of Suddeth and his witness that a source of the water upon Suddeth's land was the junction box at point B. The judge reasoned that Suddeth, having agreed to be bound by the Engineers' Report, was precluded from presenting testimony as to sources other than those contained in the Report. The trial judge then ruled that the evidence was insufficient to raise an inference that respondents did anything to create a nuisance per se or cast surface water in concentrated form upon Suddeth's land.

We are of the opinion that the trial judge abused his discretion in holding that Suddeth could not introduce lay testimony regarding the source of the water problem. Our reasons are three-fold.

First, the order of appointment clearly contemplates a trial. The Engineers' Report was to be admitted "in any trial of the within matter." The parties clearly never contemplated that by consenting to the order, they relinquished their right to testify to their personal knowledge of the causes and sources of the problem. Otherwise, they would have simply provided that all evidence as to the source of the problem, except the Report, would be excluded and the Report would establish the rights and obligations of each of them. Stipulations will not be so construed as to give the effect of an admission of fact obviously intended to be controverted or the waiver of a right not plainly intended to be relinquished. *Rickert v. Rickert*, 282 N. C. 373, 193 S. E. (2d) 79 (1972); 83 C.J.S. *Stipulations* Section 11 (1953). A party's agreement to be bound by the testimony of an expert, to be given in the form of a report, does not ordinarily mean that it is to be accepted as conclusive, but only that he will accept the report for what it is worth, without further examination of the witness. 83 C.J.S. *Stipulations* Section 23 (1953).

Second, the Engineers did not fully comply with their "order of appointment" in that they did not explicitly assign responsibility for the surface water problem to anyone.

Finally, the trial judge's change of position regarding the effect of the Report in the middle of the trial substantially prejudiced Suddeth's presentation of his case. At the beginning of the trial, he stated "Gentlemen, again, now, for the record, and so we'll all understand the rules, I've ruled that this [Engineers'] report is all inclusive of all expert testimony regarding the problem." It was only after Suddeth was well into presenting his case and after continuous objections from respondents' attorney that the judge decided to exclude lay testimony regarding additional sources of the surface water on Suddeth's land. The court's own confusion and its misleading rulings constitute prejudicial error. *See School Boy Sportwear Corp. v. Cornelia Garment Co.*, 106 Ga. App. 99, 126 S. E. (2d) 248 (1962). A stipulation will not be enforced if it is contradictory and confusing and stands in the way of a true determination of the parties' rights or where it is subject to different constructions and there is a disagreement as to what was intended to be included therein.

83 C.J.S. *Stipulations* Section 31 (1953); *Cf. Adams v. Orr*, 260 S. C. 92, 194 S. E. (2d) 232 (1973).

Additionally, we think the trial judge committed error in not submitting the nuisance issue to the jury. The evidence raises an inference that the actions of Salisbury and Knight caused the backing up of water on Suddeth's land or prevented its run-off. One of the exceptions to the "common enemy rule" in South Carolina is that the right to deal with surface water is subject to the general law regarding nuisances. *Baltzeger v. Carolina Midland Railway*, 54 S. C. 242, 32 S. E. 358 (1899).

Both Suddeth and an adjacent property owner testified that after heavy rains, water builds up in the area around the junction box. Mr. Suddeth also testified that stagnant water some 40 inches deep stood in the ditch for 6-10 months out of the year, and as a result his land was soggy and bred mosquitoes.

The traditional test for determining what is a nuisance per se is that the nuisance has become dangerous at all times, and under all circumstances, to life, health or property. *Deason v. Southern Railroad Co.*, 142 S. C. 328, 140 S. E. 575 (1927). *Deason* involved a factual situation where the Railroad Company closed a ditch and raised an embankment which caused water to pond on an uphill landowner's land. The Court, in affirming a jury verdict for the landowner, said that the question of whether or not the nuisance had become dangerous at all times and under all circumstances to life, health or property was for the jury. The Court went on to say:

> The liability and probability of the ponds overflowing at every rain, and of drying up and creating mosquitoes during every dry spell, might, or might not, make the place a source of perpetual danger to life, health and property, as the jury might view the testimony and circumstances. That was peculiarly a question for the jury, and there was sufficient latitude in the pleadings and testimony to make a jury question on the matter of a continuing nuisance.

Mr. Suddeth's testimony, taken in the light most favorable to him, brings this case within the parameters of the rule laid down in *Deason*. It was peculiarly a question for the jury as to

whether or not the flooding of Mr. Suddeth's property and its attendent problems were dangerous at all times and under all circumstances to life, health or property. The trial judge therefore committed error in granting the nonsuit.

Because we remand this case for a new trial, we do not reach the other assignments of error alleged. We have no reason to believe that these alleged errors, if in fact prejudicial, will recur in a new trial.

Accordingly, the judgment of the court is reversed and the case remanded for a new trial.

Reversed and remanded.

SHAW and GOOLSBY, JJ., concur.

## EXHIBIT NUMBER 1