22500

Billy F. IRWIN and Frances L. "Rena" Irwin, Appellants v. MICHELIN TIRE CORP., Ashemore Brothers, Inc., and Lockwood Greene Engineers, Inc., Defendants, of whom Michelin Tire Corp. is the Respondent.

(341 S. E. (2d) 783)

Supreme Court

*J. Randall Davis, Patrick J. Frawley,* of *Long, Bouknight, Nicholson, Davis & Young,* Lexington; and *James B. Richardson, Jr.,* of *Ham & Richardson,* Columbia, *for appellants.*

*Heyward E. McDonald,* of *Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, *for respondent.*

Heard Jan. 22, 1986.

Decided March 12, 1986.

FINNEY, Justice:

Appellants, the Irwins, sued the respondent, Michelin, *et al.,* seeking to recover damages alleged to have resulted to their lower riparian property (a seventeen acre lake) claiming that their damages were caused by the design, construction and/or maintenance of Michelin's manufacturing plant.

Appellants' major contention is that the trial judge's charge did not adequately cover the rights of a lower riparian landowner or, in the alternative, that this Court should adopt what they designate as the "New Jersey

Rule."[1] We affirm.

The Michelin facility occupied a two hundred fourteen (214) acre site on which there was a nine hundred three thousand (903,000) square foot plant and a one hundred seventy thousand one hundred (170,100) square foot paved parking area approximately 3,500 feet north of appellants' lake.

Prior to Michelin's acquisition of the undeveloped tract, there was a watershed on it which drained primarily in two directions. Some surface water drained northward away from the direction of the appellants' lake and the remaining surface water drained southward. A portion of this south-ward-draining surface water entered an eighteen (18) inch culvert under Two Notch Road, and the remainder drained into a stream and exited the Michelin property through a twenty-four (24) inch culvert under Two Notch Road. Water from both culverts merged just south of Two Notch Road, crossed the property of another landowner, and then fed into appellants' lake.

In 1980, before commencing construction of buildings and paved parking lots, Michelin graded portions of its tract and installed a drainage system, which directed water in ar-tificial channels to the culverts through which water and silt were carried downstream into appellants' lake. The parties agreed that silt and other natural materials from the Michelin watershed ran downstream into the lake prior to construction in 1980.

The appellants sued Michelin alleging that it had, by the use of its upper riparian property, damaged the appellants. They sued the defendant Ashemore alleging improper con-struction, which resulted in damage to their property, and the engineering firm, Lockwood-Greene, alleging error in design of the sediment control and storm drainage system. Ashemore was granted a nonsuit at the conclusion of ap-pellants' case; the jury returned a verdict for Lockwood-Greene, which has not been appealed, and a verdict for the respondent Michelin, which is the subject of this appeal.

Appellants presented testimony that by reason of the construction and paving, an increased volume and flow of

---

[1] *Smith v. Orben*, 119 N. J. Eq. 291, 182 A. 153 (1935).

water entered the natural watercourse and carried with it silt, which collected in appellants' lake. There was further testimony that the silt caused a weed problem and the increased flow overtaxed spillways, dams, and caused the lake to overflow.

Respondent elicited testimony that the design of the drainage system was such that the acreage of the watershed draining into the stream, the rate of drainage and the amount of water that entered the natural watercourse was unchanged after construction. There was also testimony that no unusual weed problem existed in the lake after construction, and that although the lake had overflowed through the emergency spillway twice during heavy rains in April of 1983, the lake had also overflowed once through the emergency spillway during rains in 1967 prior to this construction project. The record is devoid of any evidence with regard to increased silt as a result of changes made to the property by Michelin.

As framed by the appellants, the sole question is:

> Should South Carolina adopt the New Jersey exception to the Common Enemy Rule; namely, that where the land's natural ability to absorb and percolate water is retarded by the installation of an artificial drain system, thereby injuring lower proprietors by an increased volume and hastened flow of water, the upper proprietor is liable.

South Carolina has historically followed the Common Enemy Rule with regard to surface water which allows only two exceptions. The first involves creation of a nuisance, and the second relates to the collection and discharge of surface water in a concentrated form upon one's neighbor. *Garmany v. Southern Railway Co.*, 152 S. C. 205, 149 S. E. 765 (1929). It was agreed at trial by all parties that neither of the two delicts addressed by the exceptions enumerated in *Garmany* is present in this case. Thus, the burden is upon the appellants to persuade this Court to expand the *Garmany* Rule.

Appellants urge that, due to the massive construction projects involved in the rapid industrialization of this state, a lower riparian proprietor is entitled to more protection

than is now available, and they contend that the trial court erred in refusing their request to charge the jury the "New Jersey Rule," which is enunciated as follows:

Where, by installing an artificial drain system, an upper proprietor decreases the natural absorption, seepage and percolation of water on his property, thus materially increasing the volume and hastening the flow of water onto the property of a lower proprietor, and [where] such property is damaged thereby, the upper proprietor is liable for such damage. *Smith v. Orben, supra.*

We disagree.

The trial judge properly elected to charge what the parties designated as the "Virginia Rule"[2] which, in our opinion, adequately modernizes the South Carolina law and more closely parallels our Common Enemy Rule and its two exceptions than the "New Jersey Rule," which would potentially impose strict liability for any modification of the water flow.

If we should adopt the "New Jersey Rule," it could have a traumatic effect upon the orderly development of our state. Obviously, every construction project of any magnitude could decrease the absorption, seepage and percolation rate of the land, and potentially allow every lower riparian or adjoining landowner to institute a cause of action. If there is to be such a fundamental change in the law, we believe that it should be by legislative action and not judicial decision. The general rule is set out in 78 Am. Jur. (2d), *Water*, Section 132, as well as the fact that this issue involves a substantial question of public policy which has been dealt with in some states by statutory enactments.

We note that the appellants did not specifically except to the trial judge's charge as made but sought to have the court charge the "New Jersey Rule" in addition to the charge

---

[2] The Virginia law, as defined by the Court in *McCauley v. Phillips*, 216 Va. 450, 219 S. E. (2d) 854 (1975), states:

We hold that where no greater surface water drainage occurs than would naturally result from the reasonable development of an upper landowner's property, liability will not be imposed merely due to the presence of an artificial drainage system.

given by the trial judge.

In order to comply with appellants' request, the court would have been required to charge inconsistent propositions of law which would have been misleading and confusing to the jury.

We affirm the trial judge's charge to the jury and decline to adopt the "New Jersey Rule."

The respondent has submitted three additional sustaining grounds, each of which raises substantial issues; but in view of this Court's decision, we do not feel that it is necessary to address respondent's additional sustaining grounds.

Affirmed.

NESS, C. J., and GREGORY, HARWELL and CHANDLER, JJ., concur.