579 S.E.2d 616

**James R. HINKLE and Emily Hinkle, Respondents,**

v.

**NATIONAL CASUALTY INSURANCE COMPANY, Appellant.**

**No. 25626.**

Supreme Court of South Carolina.

Heard March 19, 2003.
Decided April 14, 2003.
Rehearing Denied May 15, 2003.

Thomas C. Salane, of Columbia, for Appellant.

William P. Hatfield and Reginald C. Brown, Jr., both of Florence, for Respondents.

Justice PLEICONES.

Appellant (Insurance Company) appeals a jury verdict awarding the Hinkles (respondents) $1,500 actual damages and $280,000.01 punitive damages on their claim of negligent nonrenewal of a homeowner's insurance policy.[1] Insurance Company argues it was entitled to a directed verdict or to a

---

1. The case was also submitted to the jury on a bad faith failure to renew claim. The verdict on that claim was for the respondents, but $0 damages. The parties agree this was a 'perverse' defense verdict, and this claim is not the subject of this appeal.

judgment notwithstanding the verdict (JNOV) for several different reasons; that the punitive damage award was excessive as a matter of law; and that it was entitled to a new trial because of flaws in the jury charge. We find the trial judge erred in denying the Insurance Company's directed verdict motion and reverse.

## FACTS

Respondents own a mobile home manufactured in 1980. They have financed improvements to the home by remortgaging it. In 1992, respondent Emily Hinkle (Emily) approached the Foster Insurance Agency about purchasing a homeowner's policy to cover the trailer. She told the agent the respondents needed flood coverage because the mobile home was located in a flood zone near a creek.[2] The insurance application contains this notation in the agent's handwriting "Include VSI & Fed Flood."

The declaration page for the period 8/21/92 to 8/21/93 includes a $3 charge for 'Flood' as an optional coverage. It is undisputed that, from the Insurance Company's perspective, this $3 optional flood coverage was meant only to protect the lender's interest in case the trailer was totally destroyed in a flood. The respondents believed they had flood coverage.

The policy was issued only after the agent responded to Insurance Company's request for more information, including verification that the mobile home was not in a flood area. Respondents supplied the agent with a copy of an appraisal done by the trailer's lien holder that indicated that the mobile home was not in a FEMA flood hazard area. The agent forwarded the appraisal to the Insurance Company. The agent testified she could submit any application whether or not it met Insurance Company's underwriting guidelines, but that it was Insurance Company's decision whether to bind the policy.

It is undisputed that had the Insurance Company known that the mobile home was, in fact, located in a flood zone,

---

**2.** Since the appeal comes before the Court on a claim of entitlement to a directed verdict/JNOV, we review the facts in the light most favorable to respondents. *E.g., Sabb v. South Carolina State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002).

respondents' insurance application would have been rejected under the Insurance Company's underwriting guidelines. Further, Emily testified that she understood there was no assurance that the policy would be renewed, but that the decision to offer a renewal would be made anew each year.

The first policy period ran from August 1992 until August 1993. On January 19, 1993, the home was flooded, but not destroyed. The agent submitted the respondents' claim to the Insurance Company, which paid them approximately $7,290. This claim was paid despite the fact that, under the policy, the only flood coverage provided that the lender would be paid in full if the trailer were totally destroyed.

In March 1993, the Insurance Company sent a notice of nonrenewal to the respondents. This notice was triggered by the Insurance Company's erroneous attribution of a theft claim to the respondents' policy. The Insurance Company, virtually simultaneously, sent respondents a renewal notice. The Insurance Company honored the renewal notice, and the respondents purchased a second policy covering the period August 1993, to August 1994. They received a renewal notice and purchased a third policy for the period August 1994, to August 1995.

On December 23, 1994, during the third policy year, the respondents' mobile home was again flooded. This time, Insurance Company denied the claim on the ground that there was no coverage. The denial of this claim led to respondents suing Insurance Company for bad faith refusal to pay, a suit that resulted in a verdict for respondents.

Following this second flood loss, Insurance Company sent a timely notice of nonrenewal to respondents stating as the reason for the nonrenewal "loss frequency." The respondents testified they had a difficult time getting homeowner's insurance from another company, paid that company higher premiums for less coverage, and suffered emotional upset as the result of the loss of coverage. Since their home is located in a flood plain, respondents are unable to obtain private flood insurance and apparently have chosen not to participate in the federal flood program.

## ISSUE

Whether the trial court erred in denying Insurance Company's motion for a directed verdict on the negligent nonrenewal claim?

## ANALYSIS

When considering a directed verdict or a JNOV motion, the trial court is required to view the evidence and the inferences that can be drawn from that evidence in the light most favorable to the nonmoving party. *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002). This Court will reverse the trial court's rulings on these motions only where there is no evidence to support the rulings or where the rulings are controlled by an error of law. *Id.*

Respondents have styled their legal theory here as 'negligent nonrenewal of a homeowner's insurance policy.' As the Insurance Company pointed out at trial and in its brief, there was nothing 'negligent' about its decision not to renew the respondents' policy: it was an intentional act.[3] Nevertheless, this case was tried and is argued as if negligence were the issue.

As noted above, a negligence claim is premised on the defendant's breach of a duty owed to the plaintiff. *Sabb v. South Carolina State Univ., supra.* Generally, unless the insurance policy provides otherwise or in the absence of a statutory requirement, there is no legal duty to renew a policy. *E.g.*, 44 C.J.S. Insurance § 344 (1993). Therefore, the first question here is the source of the duty alleged to have been negligently breached by Insurance Company.

There is no contention that any renewal obligation is found in the contract. In brief, respondents allege the duty breached is found in § 38–75–790. Section 38–75–790 provides:

No insurer may nonrenew a policy of homeowners insurance because the insured has filed a claim with that insurer for damages resulting from an act of God.

At the nonsuit stage, however, respondents maintained:

---

3. It appears that respondents' theory here is actually that of a 'retaliatory nonrenewal in violation of S.C.Code Ann. § 38–75–790 (2002).'

We also previously intended to go forwards [sic] on the violation of the statute 38–75–790 as creating we believe, a private right of action for the insurance companies [sic] nonrenewal in violation of the statute because that was a[sic] act of God occurrence. An [sic] while we believe our position is strong so that the record is pristine in this case, we are not going to pursue that claim except as it relates to the bad faith claim.

Insurance Company's attorney responded to this statement by asking what, then, was the basis of the negligence claim, since the only evidence was that the nonrenewal was intentional. The trial judge denied the Insurance Company's request for a nonsuit on the negligence claim.

It is clear, however, that the only possible source of a duty here is § 38–75–790. As noted above, however, at the nonsuit stage, respondents maintained the statute was only relevant to their bad faith claim.[4]

At the directed verdict stage, the following exchange occurred between the attorneys:

Insurance Company: With regard to my understanding of the [negligence] claim which is a quasi violation of a statute or statute creating a duty negligence [sic] and meeting that duty, the complaint alleged a violation of 38–75–790. Do I understand that [respondents are] not asserting that independent cause of action for a violation of section 38–75–790?

Respondent: Is that a question?

Insurance Company: Yes.

Respondent: I'm sorry. I was conferring with [co counsel].

Insurance Company: Do I understand correctly that you've withdrawn the second cause of action for violation of the statute 38–75–790?

Respondent: As a private cause of action we have.

Insurance Company again sought to require respondents to specify the basis of their negligence theory. Respondents stated they were relying upon their arguments made at the nonsuit hearing to oppose the Insurance Company's directed

---

4. Respondents did not appeal from the 'perverse' defense verdict on this cause of action.

verdict. They then argued that there was conflicting evidence whether the Insurance Company had a firm policy of declining to insure all trailers in flood zones or whether there was some flexibility in this process.[5] Nowhere was there any mention of a duty or any reference to § 38–75–790. The judge denied the directed verdict motion.

Insurance Company then objected to numerous aspects of respondents' request to charge. It pointed out that the first reference to § 38–75–790 mis-paraphrased the statute; the trial judge responded by saying he understood that part of the charge to have been withdrawn because it went to the private cause of action claim. The Insurance Company then objected to the entire charge on 'negligent nonrenewal,' in part because it twice referred to § 38–75–790, and in part because it charged that a violation of that statute constituted negligence per se. Insurance Company also objected to another charge on the effect of a violation of § 38–75–790, and respondents agreed to withdraw it.

Insurance Company objected to yet another reference to § 38–75–790, and to the charge's paraphrase of that statute. Respondents again alleged that the repetition of the statute at this point in the charge was necessary to instruct the jury fully on their bad faith claim. As the discussion continued, respondents agreed to omit all references to § 38–75–790 in connection with their negligent nonrenewal claim.

Following the jury verdict for respondents on their 'negligent nonrenewal' cause of action, Insurance Company filed a timely post-trial motion. It sought a JNOV on the ground that there was no private cause of action under § 38–75–790. Respondents' return to the JNOV concedes they withdrew that claim at trial, but nonetheless asserts the statute "clearly establishes a duty of care by this defendant to the plaintiffs."

For purposes of this appeal, we assume that a decision not to renew a homeowner's policy because the homeowner made

---

5. This argument was premised on a mischaracterization of the agent's testimony. The agent testified while she could submit any application, whether or not it met the underwriting guidelines, it was the Insurance Company's decision whether to bind the coverage. Recall that Insurance Company asked whether respondents' trailer was in a flood zone before binding the contract, and the respondents supplied their lender's appraisal showing the property was not in a flood area.

a claim for damages resulting from an act of God[6] would support a tort claim.[7] Therefore, the dispositive question is whether there is any evidence that Insurance Company 'negligently' nonrenewed respondents' homeowner's policy. We hold that there is none.

There is no evidence that the Insurance Company's decision to nonrenew was based on a negligent breach of duty. Rather, the repeated claims put the Insurance Company on notice that the flood risk for this particular site was excessive, and it subsequently determined respondents' trailer was located in a flood zone. Insurance Company's underwriting guidelines prohibited issuance of a homeowner policy for a mobile home located in such a zone. Accordingly, the decision not to offer to renew respondents' policy was made.

The respondents would have the Court adopt a rule that an insurance company, having mistakenly issued a policy based on the insureds' misrepresentation (innocent or not) of the risk, is bound to renew this policy in perpetuity. While § 38–75–790 prevents an insurance company from nonrenewing a homeowner's policy in retaliation for a claim predicated upon an act of God, nothing in that statute precludes an insurer from reassessing the risk of a particular insured property, and from declining to renew the policy upon a determination that the property does not meet the insurer's underwriting guidelines.

The trial judge erred in denying the Insurance Company's directed verdict and JNOV motions because there is no evidence that Insurance Company negligently breached any duty

---

6. We also assume for purposes of this opinion that respondents suffered floods that qualified as an act of God.

A flood of unprecedented or extraordinary nature is an "act of God" in the legal sense, but such a flood is held not to be so where it could be anticipated by ordinary foresight and prudence . . .

*Baynham v. State Highway Dep't,* 181 S.C. 435, 187 S.E. 528 (1936). We question whether respondents' trailer, located in a flood zone and subject to regular flooding, suffers from 'act of God' floods, rather than from floods that can be anticipated by ordinary foresight and prudence.

7. Insurance Company maintained at oral argument that the only cause of action that would lie for a breach of this statute would sound in contract.

owed to respondents. Accordingly, the verdict for the respondents is

REVERSED.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.