598 S.E.2d 712

Franklin LUCAS, Petitioner,

v.

RAWL FAMILY LIMITED PARTNERSHIP, Wayne P. Rawl, Howard N. Rawl and Mary R. Wingard, its general partners, Respondents.

No. 25817.

Supreme Court of South Carolina.

Heard Feb. 5, 2004.
Decided May 3, 2004.
Rehearing Denied July 23, 2004.

Joseph M. Epting, of The Epting Law Firm, LLC, of Irmo, and Katherine Carruth Link, of Columbia, for Petitioner.

Robert J. Thomas, of Rogers Townsend & Thomas, PC, of Columbia, for Respondents.

Acting Justice MACAULAY:

We granted certiorari to review the Court of Appeals' decision in Lucas v. Rawl Family Ltd. Partnership, Op. No.2003–UP–62 (S.C. Ct.App. filed January 22, 2003). We reverse.

## FACTS

Petitioner purchased approximately 118 acres of land in Lexington County in 1990, where he grew Coastal Bermuda grass and other crops. He also built a home on the property and used a pond for recreation and fishing.

In 1996, respondents purchased a 146–acre tract north of and adjacent to petitioner's property. Respondents' land is higher in elevation, and water naturally flows from respondents' property to petitioner's property. Sometime after the purchase, respondents cleared approximately forty acres of land for farming by cutting trees and removing the stumps.

On May 5, 1998, heavy rains caused extensive flooding on petitioner's property. When petitioner and his son-in-law, Robert Howell, arrived to inspect the property, they saw that surface water, silt, and debris from respondents' land had washed over the fields and into the pond. The fields were covered in standing water and the pond was flooded, causing extensive damage. The pond dam was eroding and Howell was forced to remove boards holding the dam in place to relieve the pressure and prevent the dam from bursting and flooding the nearby Pelion School. Petitioner presented evidence that the property now floods every time there is a heavy rain and, as noted by the Court of Appeals, the flood-damaged fields do not produce Coastal Bermuda as vigorously as they did prior to respondents' clearing their land.

Petitioner's suit against respondents alleged negligence, trespass, and nuisance. Respondents moved for a directed verdict following the presentation of evidence. The trial judge ruled that the case did not properly sound in negligence, and granted the directed verdict motion on the negligence claim. However, the trial judge refused to grant a directed verdict on the trespass and nuisance causes of action.

The jury found in favor of respondents on the trespass cause of action, and found for petitioner on the nuisance cause of action.[1] Respondents appealed, arguing, among other

---

1. The jury awarded $128,000 in damages. However, the trial judge permitted a $10,000 offset from an earlier settlement petitioner had received from another adjoining landowner. Therefore, the trial judge entered a verdict for $118,000.

things, that they were entitled to a directed verdict on the nuisance cause of action.

The Court of Appeals reversed and found that, because the common enemy rule did not apply, the trial judge erred in failing to direct a verdict on the nuisance claim.

## ISSUE

Did the Court of Appeals err in holding that the trial judge should have granted the motion for a directed verdict on the nuisance cause of action?

## ANALYSIS

Prior to ruling on whether the trial court erred in refusing the directed verdict motion, the Court of Appeals held the common enemy rule did not apply because respondents were merely preparing the land for farming and did not intend to influence the course of surface water. Accordingly, the Court of Appeals held the nuisance exception to the common enemy rule could not apply, and that respondents were entitled to clear their land irrespective of the future effect it would have on surface water. This was error.

■■■ South Carolina follows the common enemy rule with respect to the diversion of surface waters naturally flowing across land. *Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 247–48, 32 S.E. 358, 360 (1899); *Johnson v. Phillips*, 315 S.C. 407, 412, 433 S.E.2d 895, 898 (Ct.App.1993), *rev'd on other grounds by Smith v. Phillips*, 318 S.C. 453, 458 S.E.2d 427 (1995); William T. Toal, *Surface Water in South Carolina*, 23 S.C. L.Rev. 82, 83 (1971). The rule allows a landowner to treat surface water as a common enemy and dispose of it as the landowner sees fit. *Glenn v. School Dist. No. Five of Anderson County*, 294 S.C. 530, 533, 366 S.E.2d 47, 49 (Ct. App.1988).

■■■ There are, however, two exceptions. First, the common enemy rule is subject to the law of nuisance and an individual may not obstruct or alter the flow of water to create a nuisance *per se. Johnson v. Phillips, id.* at 414, 433 S.E.2d at 899; *Baltzeger v. Carolina Midland Ry. Co., id.* at 247, 32 S.E. at 359–60. Second, except by contractual or prescriptive

right, an upper landowner may not, by means of a ditch, impoundment or other artificial structure, collect surface water on his own land and cast it in a concentrated form upon lower adjoining land. *Johnson v. Phillips, id.* at 414, 433 S.E.2d at 899.

In his complaint, petitioner alleged respondents began an active and aggressive program of grading, clearing, bulldozing, ditching, land alteration, and removal of trees and vegetation from a substantial portion of their property prior to May 5, 1998. Petitioner alleged those actions resulted in an "alteration and/or diversion in the natural flow of surface water so as to create a nuisance and/or also [respondents] artificially collected surface water and cast it in a concentrated form upon [petitioner's] land."

Neither respondents nor petitioner ever argued that the common enemy rule did not apply. Further, petitioner objected to respondents' proposed jury charge on the common enemy rule because it failed to charge the nuisance and casting exceptions. The trial judge agreed with petitioner, and charged both exceptions.

The Court of Appeals initially noted that both parties had agreed the damage to petitioner's land was caused by surface water runoff from respondents' land. The Court of Appeals then stated that the extension of the common law doctrine, known as the common enemy rule, applies only "when a landowner takes direct action addressing surface water to the detriment of an adjoining landowner, such as obstructing or altering its natural flow." Concluding that the record was devoid of any evidence that the clearing of trees and stumps from respondents' property was for any purpose other than to prepare the land for farming, the Court of Appeals found there was no evidence respondents intended to influence the natural flow of surface water. Therefore, the Court of Appeals held the common enemy rule, together with its nuisance exception, could not apply.

The Court of Appeals erred for two reasons. First, neither petitioner nor respondent ever argued that the common enemy rule did not apply at trial or on appeal.[2] It is well

---

**2.** In fact, respondents argued in their brief to the Court of Appeals that, "the common law, common enemy rule applies."

settled that, but for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court. *Holy Loch Distributors, Inc. v. Hitchcock,* 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000); *Smith v. Phillips, id.* at 455, 458 S.E.2d at 429. Therefore, the Court of Appeals erred because the trial judge's unappealed ruling that the common enemy rule applied was the law of the case. *Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 160, 177 S.E.2d 544, 544 (1970) (stating that an issue which is not challenged on appeal, whether right or wrong, becomes the law of the case).

Second, even if the Court of Appeals did not err in addressing the issue, it erred in holding that the common enemy rule is merely an extension of the common law rule.

There are three basic rules governing the disposal of unwanted surface water: (1) the common law or common enemy rule, (2) the civil law rule, and (3) the reasonable use or modified civil law rule. Toal, 23 S.C. L.Rev. at 82. In adopting the common law rule in *Edwards v. Charlotte, C. & A.R. Co.,* 39 S.C. 472, 475, 18 S.E. 58, 59 (1893), this Court held that, "[u]nder the common law rule, surface water is regarded as a common enemy." *See also* Janet Fairchild, *Modern Status of Rules Governing Interference with Drainage of Surface Waters,* 93 A.L.R.3d 1193, 1199 (1979) (under "the common enemy, common law, or Massachusetts doctrine," each landowner is entitled to take whatever steps he pleases, on his own land, to dispose of surface water without liability to adjoining landowners).

It is clear that the "common law" and "common enemy" rules are the same rule. Further, despite the fact that respondents did not intend to alter the flow of surface water, there was ample evidence that respondents' clear-cutting prevented surface water from being absorbed into the soil and increased the flow of water onto petitioner's land, including testimony from respondents' own expert that clearing the land decreased surface water absorption and increased runoff. Therefore, the Court of Appeals erred in holding that the common law rule applied, that the common enemy rule did not apply, and that the common enemy rule was merely an "extension" of the common law rule.

Respondents argue that, even if the Court of Appeals erred in holding the common enemy rule did not apply, respondents were still entitled to a directed verdict on the nuisance cause of action because petitioner failed to prove respondents' actions amounted to a nuisance *per se.* We disagree.

In ruling on a motion for directed verdict, a court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999); *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998). The trial court should deny the motion where either the evidence yields more than one inference, or its inference is in doubt. *Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003). This Court will reverse the trial court's rulings on a directed verdict motion only where there is no evidence to support the ruling or where the ruling is controlled by an error of law. *Hinkle v. National Cas. Ins. Co.,* 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).

Respondents argue, as they did at trial and before the Court of Appeals, that petitioner provided no evidence respondents' actions amounted to a nuisance *per se.* Accordingly, respondents contend the trial judge erred in submitting the case to the jury.

The traditional test for determining the existence of a nuisance per se is whether the nuisance has become dangerous at all times and under all circumstances to life, health, or property. *Suddeth v. Knight,* 280 S.C. 540, 545, 314 S.E.2d 11, 14 (Ct.App.1984); Black's Law Dictionary 1094 (7th ed.1999) (a nuisance *per se* is an interference so severe that it would constitute a nuisance under any circumstances).

In the present case, there was evidence that petitioner's fields now flood in every heavy rain and that petitioner has been unable to grow crops on a portion of his land because of the standing water, silt, and other debris that accompany the flooding. Accordingly, there existed a jury question as to whether the respondents' actions constituted a nuisance per se and were dangerous to the property at all times because of the continuing nature of the flooding and because of the diminish-

ed production of the Coastal Bermuda fields. *Deason v. Southern Ry. Co.*, 142 S.C. 328, 140 S.E. 575 (1927) ("whether or not the nuisance 'had become dangerous at all times and under all circumstances to life, health, or property' was for the jury"); *Suddeth v. Knight, id.* at 545–46, 314 S.E.2d at 15 (it was peculiarly a question for the jury as to whether the flooding of plaintiff's property and its attendent problems was dangerous at all times and under all circumstances to life, health, or property).

## CONCLUSION

The judgment of the Court of Appeals is reversed and the verdict, as offset by the trial judge, is reinstated.

**REVERSED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES:

I respectfully dissent, and would affirm the decision of the Court of Appeals setting aside the jury verdict in this case.

In my opinion, the facts of this case demonstrate that respondents' actions were not an attempt to deal with the "common enemy," but instead establish that respondents were simply preparing their land for agricultural use. To hold, as the majority does, that these actions implicate the common enemy doctrine flirts with adoption of an expansive view of the "New Jersey Rule" which we rejected in *Irwin v. Michelin Tire Corp.*, 288 S.C. 221, 341 S.E.2d 783 (1986).[3] Since, however, the parties tried this matter as if the doctrine were applicable, I agree that we should review whether there was any evidence of nuisance *per se* here.

---

**3.** "Obviously, every construction project of any magnitude could decrease the absorption, seepage, and percolation rate of the land, and potentially allow every lower riparian or adjoining landowner to institute a cause of action. If there is to be such a fundamental change in the law, we believe that it should be by legislative action and not judicial decision." *Irwin* at 225, 341 S.E.2d at 785.

I find no evidence of nuisance *per se* warranting submission of this case to the jury. The nuisance exception to the common enemy rule requires, as a predicate for its application, the existence of evidence that surface water has accumulated. *See, e.g., Deason v. Southern Ry. Co.,* 142 S.C. 328, 140 S.E. 575 (1927)(jury issue whether defendant's creation of pond by raising embankment and stopping up drainage ditch created a nuisance *per se* ); *Baltzeger v. Carolina Midland Ry. Co.,* 54 S.C. 242, 32 S.E. 358 (1899)(grant of demurrer on nuisance *per se* reversed where complaint alleged defendant constructed embankment and ditches causing surface water to accumulate and stagnate); *Suddeth v. Knight,* 280 S.C. 540, 314 S.E.2d 11 (Ct.App.1984)(jury issue where evidence that defendant's construction caused standing water 40 inches deep to accumulate and stagnate on plaintiff's property for 6–10 months a year); *see also F.P. Hubbard & R.L. Felix, The South Carolina Law of Torts* (2nd ed.1997) pp. 222–223 (". . . accumulations of water can have other effects in addition to direct impacts like flooding—providing a place for mosquitoes to breed, for example; and there may be a nuisance for these other effects"). That the nuisance *per se* exception is limited to situations where the accumulation of surface water leads to secondary problems, and that it is those secondary effects which give rise to the nuisance is exemplified by the requirement that one alleging the nuisance must show that "it has become dangerous, at all times and under all circumstances, to life, health, or property." *Baltzeger* at 360. Unlike the majority, I find no evidence of continuing danger in the possibility of periodic flooding, nor do I perceive any danger to life, health, or property in the reduced productivity of petitioner's turf farming operation.

While I am not unsympathetic to the impact of respondents' agricultural development on petitioner's property, this is a situation *damnum absque injuria.* For these reasons, I would affirm the Court of Appeals' decision.