**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Michele Blank, Appellant,

v.

Patricia Timmons, Trustee of the Gordon H. Timmons Exempt Family Trust, Respondent.

Appellate Case No. 2019-001555

———————

Appeal From Charleston County
William P. Keesley, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-425
Heard September 12, 2022 – Filed November 30, 2022

———————

**AFFIRMED**

———————

Edward A. Bertele, of Charleston, for Appellant.

Mark A. Mason, of The Mason Law Firm, PA, of Mt. Pleasant, for Respondent.

———————

**PER CURIAM:** In this property boundary dispute, Michele Blank sued her neighbor, the Gordon H. Timmons Exempt Family Trust (the Trust), for contempt of court, slander of title, nuisance, and a declaratory judgment. After a bench trial, the court ruled Blank owns the disputed property, finding the Form 4 dismissal of a previous action filed by the Trust against Blank operated as res judicata. The court

then dismissed Blank's claims for contempt, slander of title, and nuisance. Blank appeals, asserting the court erred in dismissing her claims for slander of title and nuisance. We affirm.

## I.  Facts

After purchasing a vacant lot in the Copahee View Subdivision in Mount Pleasant, the Trust commissioned a survey of the lot in order to build a residential home. As a result, the Trust came to believe its neighbor, Blank, had built her home and artist studio on top of their shared property line, and, therefore, Blank's home and studio encroached on the Trust's land. In May 2015, the Trust filed a trespass to try title case against Blank, requesting Blank move her home off the Trust's land. Blank asserted she owned the land under her house and studio, and the Trust's survey had been executed incorrectly. The Trust offered (as it had before filing the lawsuit) to resolve the dispute by quitclaiming the contested area to Blank, but Blank rejected the offer for reasons not apparent from the record or the circumstances. On the day trial was set to begin in June 2016, the Trust agreed to dismiss its case against Blank with prejudice. The Form 4 order from the dismissal stated in its entirety: "[The Trust] states in open court on record they are dismissing their case with prejudice. [Blank] consents."

Within days of the dismissal, the Trust recorded a plat of its lot (Exhibit P-17), depicting a "quitclaim area" that included Blank's home and studio plus a five-foot setback. The Trust then entered a contract to sell its lot and newly built home to a third party. The sale was set to close in September 2016. On August 9, 2016, Blank filed: 1) a Lis Pendens with Charleston County, asserting she owned the quitclaim area shown on Exhibit P-17, plus additional land depicted on the plat, and 2) a complaint to enforce judgment against the Trust, asserting the Trust was violating the dismissal order of its trespass case by claiming it owned land that was Blank's. In response to Blank's Lis Pendens, the Trust recorded a revised plat of its lot (Exhibit P-18)—this time depicting a quitclaim area that encompassed all of the property Blank claimed was hers during the earlier trespass case.

The Trust renegotiated the contract with its buyer, placed a silt fence on the boundary of the quitclaim area depicted on Exhibit P-18, and quitclaimed the disputed area to the Trust. As a result of the smaller remaining lot size, the Trust reduced the purchase price of its property to the buyer by $15,000. The Trust filed a motion to cancel or amend the Lis Pendens so the sale could proceed. On September 14, 2016, the court granted the Trust's motion to amend Blank's Lis Pendens to allow the sale

of the portion of the Trust's lot that was not in dispute. Accordingly, the Lis Pendens remained only on the quitclaimed area depicted on Exhibit P-18.

In September 2016, Blank amended her complaint against the Trust, this time adding claims for slander of title and private nuisance. Blank alleged the Trust's recording of Exhibit P-17 was a "false statement" derogatory to Blank's title. Blank additionally alleged rainwater had begun flooding her property due to the Trust's installation of a driveway, which was "constructed so as to drain substantially all such volume of water upon [Blank's] property." On October 6, 2016, Hurricane Matthew barreled through Charleston, flooding Blank's artist studio with up to six inches of water.

A bench trial was held in 2019. In support of her claims, Blank called David Franklin, the engineer and surveyor who created the site plan for Blank's home in 2005. Franklin confirmed he chose the site for Blank's home because most of Blank's property was wetlands and not suitable for building a home. Franklin testified Blank's home was built on stilts to avoid tidal flooding. He also testified in his capacity as an expert in storm-water management, opining that Blank's studio was flooding after heavy rainfall because the Trust had not constructed a swale next to its new driveway.

Blank testified her home was built on stilts but she had enclosed a portion of the ground floor to create her studio. She testified her property never flooded before the Trust installed the new driveway but now flooded after heavy rainfall, causing ponding and the proliferation of mosquitoes. In support of the slander of title claim, Blank's real estate attorney, Jennifer Smith, testified that, as a result of the Trust's recording of Exhibit P-17, Blank no longer enjoyed marketable title to her property, and in order to clear title, the Trust would need to convey the quitclaim area to Blank.

In response, the Trust called its contractor, Mark Strong, to testify. Blank objected to Strong's testimony, asserting Strong was not disclosed on the pre-trial witness list. The court agreed to hear a proffer of Strong's testimony and sustained the objection. In his proffer, Strong testified he requested to build a swale on the disputed property at the time of the driveway installation, but Blank refused to allow the removal of trees necessary to build the swale. Strong testified that, as a result of Blank's refusal, he re-graded the driveway to drain towards the street. Strong testified he personally observed rainfall draining toward the street.

Over Blank's objection, Gordon Timmons also testified that, as a result of Blank's refusal to remove the trees, the driveway was re-graded to drain towards the street. Blank argued Timmons should only be permitted to testify regarding Blank's home's

encroachment on the Trust's land, and he could not testify regarding rainfall or the driveway's drainage issues because he was not disclosed in discovery as a witness regarding those topics. The court overruled this objection.

After the trial, the court issued an order ruling that, under theories of res judicata and collateral estoppel, the shared boundary between Blank's lot and the Trust's lot was the boundary as claimed by Blank in the trespass to try title case—and also reflected as the boundary of the quitclaim area in Exhibit P-18.

The court dismissed Blank's claims against the Trust for contempt and slander of title, finding the Form 4 order from the Trust's trespass to try title case was non-specific, and, because the court in that case "did not follow up on the dismissal with a more specific order or transfer documents," the Form 4 order left the status boundary between the neighboring lots "confusing." The court ruled Blank's slander of title claim failed because the Trust's act of recording Exhibit P-17 with Charleston County was not "malicious, unreasonable, or unjustified." Finally, the court found Blank did not prove her nuisance claim. Blank filed a Rule 59(e), SCRCP motion, asking the court to reconsider its rulings regarding the dismissal of her slander of title and nuisance claims, which the court denied.

## II. Discussion

"An action in tort for damages is an action at law." *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 560, 619 S.E.2d 5, 9 (Ct. App. 2005). On appeal of an action at law tried without a jury, an appellate court can correct errors of law but "will not disturb the trial court's findings of fact unless no evidence reasonably supports the findings." *Jordan v. Judy*, 413 S.C. 341, 347–48, 776 S.E.2d 96, 100 (Ct. App. 2015).

### Slander of Title

"[T]o maintain a claim for slander of title, the plaintiff must establish (1) the publication (2) with malice (3) of a false statement (4) that is derogatory to plaintiff's title and (5) causes special damages (6) as a result of diminished value of the property in the eyes of third parties." *Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 204, 723 S.E.2d 597, 603 (Ct. App. 2012) (alteration in original) (quoting *Huff v. Jennings*, 319 S.C. 142, 149, 459 S.E.2d 886, 891 (Ct. App. 1995)). "In slander of title actions, the malice requirement may be satisfied by showing the publication was made in reckless or wanton disregard to the rights of another, or without legal justification." *Huff*, 319 S.C. at 150, 459 S.E.2d at 891.

Blank alleges the Form 4 order dismissing the Trust's previous lawsuit meant the boundary line from Franklin's 2005 survey became the legal boundary. Consequently, Blank claims the Trust acted without legal justification in recording Exhibit P-17, and the court erred in finding the Trust acted without malice or bad faith. Blank asserts the court's ruling that res judicata bars re-litigating the issue of the boundary between the lots is incompatible with its ruling that the Trust acted justifiably by recording Exhibit P-17.

The record supports the court's ruling Blank did not prove her slander of title claim. First, slander of title is not a strict liability tort; its intent requirement is malice. It is the court's role in a bench trial to weigh the evidence to determine whether Blank proved the Trust did, in fact, act with malice. *Solley*, 397 S.C. at 204, 723 S.E.2d at 603. We find no error in the trial court's conclusion the Trust acted without malice in recording Exhibit P-17. *Judy*, 413 S.C. at 347–48, 776 S.E.2d at 100 (stating that, on appeal of an action at law tried without a jury, an appellate court can correct errors of law, but "will not disturb the trial court's findings of fact unless no evidence reasonably supports the findings"); *Sheek v. Crimestoppers Alarm Sys., Div. of Glen Curt Consultants*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct. App. 1989) (when reviewing final judgment in a bench trial, this court "may not consider the case based on our view of the preponderance of the evidence, but must construe the evidence presented to the [court] so as to support his decision wherever reasonably possible").

*Nuisance*

"South Carolina follows the common enemy rule which allows a landowner to treat surface water as a common enemy and dispose of it as he sees fit[; h]owever, an exception to this rule prohibits a landowner from using his land in such a manner as to create a nuisance." *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct. App. 2001) (citation omitted); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 509, 598 S.E.2d 712, 714 (2004). The common enemy rule and its nuisance exception apply even if a landowner is not intending to redirect surface water by his or her actions but does so anyway so as to create a nuisance per se on an adjoining landowner's property. *Lucas*, 359 S.C. at 511, 598 S.E.2d at 715. "The traditional test for determining the existence of a nuisance per se is whether the nuisance has become dangerous at all times and under all circumstances to life, health, or property." *Id*. at 512, 598 S.E.2d at 715. To prove nuisance a party must prove by the greater weight of the evidence that the landowner's redirection of the surface water creates an "unreasonable" danger. *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468, 476 (2013). "The unreasonableness requirement reflects the unavoidable reality that persons must suffer some inconvenience and annoyance from their neighbors for modern life to carry on." *Id*.

Here, the court found Blank failed to establish her nuisance claim against the Trust for three reasons. First, the court found "the more credible evidence is that the driveway, grading, and landscaping on [the Trust's land] do not cause considerable amounts of storm water to be cast onto [Blank's land]." Second, the court found "the greater weight of the evidence supports the determination that, when Ms. Blank rejected the proposal to construct the exact type of swale that she now asserts to be needed, the Trust took adequate steps to route surface water to the other side of [the Trust's land] away from [Blank's land]." Third, the court found Blank failed to prove the water that floods her property is the result of storm water runoff from the Trust's land and not the result of features of her own property—namely, that her property is 50% wetlands, constructed in a flood plain, and with a studio built around stilt foundations. In so ruling, the trial court rejected Franklin's expert opinion testimony, finding it was not credible.

Blank claims the court's ruling that her nuisance claim failed is controlled by errors of law. First, Blank asserts the court improperly relied upon the excluded evidence of Strong's testimony. Next, Blank asserts the court abused its discretion in overruling her objection to the admission of Timmons' testimony regarding surface water runoff and then improperly relied upon the erroneously admitted testimony. Third, Blank claims there is no reasonable evidence to support the court's finding that the features of Blank's own property caused flooding. Fourth, Blank asserts Franklin's expert testimony established her nuisance per se claim, and the court's rejection of Franklin's expert testimony was arbitrary. Finally, Blank claims the trial court misunderstood the common enemy rule and law of nuisance, and this misunderstanding controlled its ultimate ruling that Blank failed to establish her nuisance claim.

First, we find the court did not abuse its discretion in admitting Timmons' testimony regarding Blank's rejection of the swale, the installation of the driveway, and the re-grading of the driveway to manage storm water runoff. Timmons was disclosed as a fact witness in discovery, and therefore, the Trust did not violate Rule 33, SCRCP, by calling Timmons to testify. *See* Rule 33, SCRCP (governing interrogatory responses and rules); *Bensch v. Davidson*, 354 S.C. 173, 182, 580 S.E.2d 128, 133 (2003) (stating sanctions, if any, for a violation of Rule 33, SCRCP, are within the court's discretion); *Jumper v. Hawkins*, 348 S.C. 142, 149, 558 S.E.2d 911, 915 (Ct. App. 2001) ("Exclusion of a witness is a sanction which should never be lightly invoked." (quoting *Moran v. Jones*, 281 S.C. 270, 276, 315 S.E.2d 136, 139 (Ct. App. 1984))). Further, even if Timmons' testimony went beyond the scope disclosed by the interrogatories, we find his testimony about surface water was not so

surprising or prejudicial as to warrant the exclusion of his testimony. Finally, we reject Blank's argument that it was not rational for the court to exclude Strong's testimony but admit Timmons' testimony. Strong's testimony was excluded because he was not disclosed as a witness in discovery at all. This is a clear violation of Rule 33, SCRCP, and a very different situation than Timmons.

Next, it was error for the court to reference Strong's excluded testimony in its analysis rejecting Blank's nuisance claim; however, we find the error harmless. We hold Blank was not prejudiced by the court's references to Strong's proffered testimony in its factual findings because Strong's testimony was cumulative to properly admitted testimony. *Turner v. Med. Univ. of S.C.*, 430 S.C. 569, 591, 846 S.E.2d 1, 12 (Ct. App. 2020) ("When improperly admitted evidence is merely cumulative, no prejudice exists, and therefore, the admission is not reversible error." (quoting *Campbell v. Jordan*, 382 S.C. 445, 453, 675 S.E.2d 801, 805 (Ct. App. 2009))). Blank, Timmons, and Strong all testified to the same series of events regarding the proposed construction and rejection of the swale, and Timmons testified the driveway was re-graded to drain away from Blank's land, and in fact, surface water did drain away from Blank's land.[1]

Next, we find the record supports the court's reasons for rejecting Franklin's testimony as not credible, including Franklin's role, possible bias, and errors surrounding the boundary dispute. *See State v. Douglas*, 380 S.C. 499, 503, 671 S.E.2d 606, 609 (2009) (stating that, while the opinion of an expert may not be arbitrarily rejected, the fact-finder may accept or reject the testimony of an expert witness using "[t]he same tests which are commonly applied in the evaluation of ordinary evidence . . . ."); *Anderson v. Campbell Tile Co.*, 202 S.C. 54, 63–64, 24 S.E.2d 104, 108 (1943) (stating tests for accepting or rejecting testimony include "considering the ability and character of the witness, his actions upon the witness

---

[1] We note Blank asserts Timmons did not testify that he personally observed the water draining away from Blank's property; therefore, there is no credible evidence the water did drain away from Blank's property. This argument is without merit because it discounts the significance of circumstantial evidence. *State v. Logan*, 405 S.C. 83, 97, 747 S.E.2d 444, 451 (2013) (stating that, while analyzed differently by the factfinder, "direct and circumstantial evidence carry the same value"). Timmons testified to several circumstantial facts about the rain water, including that: 1) the house on the Trust's property was located behind Blank's home, so water from the roof would not drain onto Blank's home from the front; 2) the driveway was re-graded to drain away from Blank's property; and 3) Blank's property is sloped towards the Trust's property.

stand, the weight and process of the reasoning by which he has supported his opinion, his possible bias in favor of the side for whom he testifies, the fact that he is a paid witness, the relative opportunities for study or observation of the matters about which he testifies, and any other matters which serve to illuminate his statements").

As for whether the court erred in finding Franklin was "combative and dismissive" on the stand, we may not reach the issue; it is beyond our scope of review. *See Sheek*, 297 S.C. at 377–78, 377 S.E.2d at 133 (delineating scope of review for credibility determinations in a bench trial). The trial court is in a superior position to determine and evaluate a witness' demeanor; we were not there and may not second guess the court's reasons for that determination now. *See id.* (stating those determinations "*must* be left to the trial judge who saw and heard the witnesses and is therefore in a better position to evaluate their veracity." (emphasis added)). Even though Franklin was qualified as an expert, this does not mean the trial court must give Franklin's testimony more weight than the fact witnesses presented at trial. *See Douglas*, 380 S.C. at 503, 671 S.E.2d at 609 (stating "[a]s with any witness, the [fact-finder] is free to accept or reject the testimony of an expert witness . . . [; t]he fact that [the witness] was qualified as an expert did not require the [fact-finder] to accord her testimony any greater weight than that given to any other witness"). Therefore, we find the trial court did not arbitrarily reject Franklin's testimony. *See Deese v. S.C. State Bd. of Dentistry*, 286 S.C. 182, 184–85, 332 S.E.2d 539, 541 (Ct. App. 1985) ("A decision is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards."); *Sheek*, 297 S.C. at 377, 377 S.E.2d at 133 ("In a law case tried without a jury, questions regarding credibility and weight of evidence are exclusively for the trial judge.").

Finally, we find the court did not misapprehend the common enemy rule and nuisance per se in finding Blank failed to establish her claim. Under South Carolina law, occasional flooding may be enough to create a question of fact regarding whether a plaintiff has established a nuisance per se claim, as long as there is also evidence that the effects of the flooding are unreasonably "dangerous at all times and under all circumstances to life, health, or property." *See Lucas*, 359 S.C. at 512–13, 598 S.E.2d at 716 (finding trial court did not err in denying directed verdict motion on nuisance per se claim when evidence was presented during trial indicating occasional flooding made the growth of crops impossible) (quoting *Deason v. Souther Ry. Co*, 142 S.C. 328, 331, 140 S.E. 575, 578 (1927)); *Suddeth v. Knight*, 280 S.C. 540, 545, 314 S.E.2d 11, 14 (Ct. App. 1984) (finding trial court erred in

directing a verdict on the nuisance per se claim when landowner's installation of a new drainage system caused "stagnant water some 40 inches deep [to stand] in [landowner's] ditch for 6–10 months out of the year, and as a result [neighbor's] land was soggy and bred mosquitoes"); *Babb*, 405 S.C. at 145, 747 S.E.2d at 476 (in order to prove nuisance, the inconvenience must be unreasonable). Blank submitted enough evidence, even without Franklin's testimony, to survive a directed verdict motion on the theory that the Trust's installation of the driveway created a nuisance per se on Blank's property. However, this does not mean Blank ultimately wins the day on her claim or that the trial court "failed to consider" her evidence in finding she failed to prove her claim. The trial court must weigh the evidence and determine whether the ponding in Blank's yard and the flooding of her studio reached the level of an actionable nuisance per se by the greater weight of the evidence. *Sheek*, 297 S.C. at 377, 377 S.E.2d at 133 ("In a law case tried without a jury, questions regarding credibility and weight of evidence are exclusively for the trial judge."). After weighing the evidence, the court found she did not prove this claim, stating:

> [S]urface water is a common enemy . . . Almost all of the testimony from Ms. Blank about water intrusion concerned a catastrophic hurricane or periods of massive rainfall . . . The house is constructed in a flood plain zone, and while there is conflicting evidence about whether she was permitted to construct her studio on the ground floor, the evidence shows that it is equally or more likely that she constructed the studio in a manner that subjected it to occasional flooding during large amount[s] of rain. It has not been proven that the construction on [the Trust's land] did anything to substantially enhance the frequency of surface water intrusion.

We find the record supports this ruling, and we find no error. *Judy*, 413 S.C. at 347–48, 776 S.E.2d at 100 (stating that, on appeal of an action at law tried without a jury, an appellate court can correct errors of law, but "will not disturb the trial court's findings of fact unless no evidence reasonably supports the findings"); *Sheek*, 297 S.C. at 377, 377 S.E.2d at 133 (when reviewing the final judgment in a bench trial, this court "may not consider the case based on our view of the preponderance of the evidence, but must construe the evidence presented to the judge so as to support his decision wherever reasonably possible"). On this point, as with many others, the distinguished trial court's order was eloquent, compelling, and correct. Accordingly, the judgment of the trial court dismissing Blank's slander of title and nuisance claims is

**AFFIRMED.**

**GEATHERS, MCDONALD, and HILL, JJ., concur.**